COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


THOMAS EDDIE TATUM
                                        OPINION BY
v.   Record No. 2436-02-2        JUDGE SAM W. COLEMAN III
                                        JUNE 24, 2003
VIRGINIA DEPARTMENT OF AGRICULTURE
 AND CONSUMER SERVICES


         FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
               Melvin R. Hughes, Jr., Judge

         James A. Eichner (William G. Shields &
         Associates, on brief), for appellant.

         Guy W. Horsley, Jr., Senior Assistant
         Attorney General (Jerry W. Kilgore, Attorney
         General; Elizabeth A. McClanahan, Chief
         Deputy Attorney General; Judith Williams
         Jagdmann, Deputy Attorney General; Martha M.
         Parrish, Assistant Attorney General, on
         brief), for appellee.


     Thomas Eddie Tatum was employed by the Virginia Department

of Agriculture and Consumer Services (the "Department") of the

Commonwealth as an inspector, primarily inspecting gasoline

pumps for proper calibration.  The Department issued a Group III

written notice of disciplinary action against Tatum for

misconduct and removed Tatum from his job.

     Pursuant to the State Grievance Procedure, Code § 2.2-3004,

Tatum requested and received a grievance hearing before an

administrative hearing officer.  The hearing officer made

findings of fact and reduced the Department's disciplinary

action to a Group III written notice without removal, ordering reinstatement but not back pay. The Department requested the hearing officer to reconsider his decision and also requested administrative review of the hearing officer's decision. The hearing officer denied the request for reconsideration. On administrative review, the Director of the Department of Employment Dispute Resolution and the Director of the Department of Human Resources Management upheld the hearing officer's decision.

Pursuant to Code § 2.2-3006(B), the Department sought judicial review of the hearing officer's decision in the Circuit Court of the City of Richmond. The circuit court reversed the hearing officer's decision which had reinstated Tatum and upheld the Department's Group III written notice and removal of Tatum from his job.

Tatum appealed that decision to this Court, contending that the circuit court erred in reversing and vacating the hearing officer's decision reinstating him to his job. For the following reasons, we reverse the circuit court's decision and reinstate the hearing officer's decision.

## BACKGROUND

The Department employed Tatum for nine years as an inspector, primarily inspecting gasoline pumps to ensure they were accurately calibrated. He worked independently, with little supervision. According to the Department's program

manager, all inspectors are "vested with police powers in the weights and measures law. [Therefore,], [i]t's important that we're able to rely on their judgment, rely on their honesty, [and] credibility, . . . from the standpoint of there's not someone looking over their shoulder each hour of the day."

During the fall of 2000, Tatum accepted outside employment during his off-hours for F.W. Baird, a company regulated by the Department, and he performed work similar to that which he performed for the Department. When the Department learned of Tatum's outside employment, it investigated the situation and determined that Tatum's activity constituted a prohibited conflict of interest. It issued a Group II written notice to Tatum for that misconduct. Tatum did not grieve that disciplinary action.

As part of Tatum's job, he was required to complete three written documents to account for his time: a Leave Activity Reporting Form, a Timesheet, and an internal work report. On November 22, 2000, Tatum submitted those documents and claimed that his absences from work on November 20 and 21, 2000 were due to personal sick leave. In fact, Tatum was not sick on those dates, rather, he was working in another state in his outside employment for F.W. Baird.

As a result of Tatum's falsifying his leave report and timesheet records, the Department issued Tatum a Group III written notice with removal from his job on September 10, 2001.

State personnel policy describes Group III offenses as of such a serious nature that the normal disciplinary action for a Group III offense is termination of employment. See Department of Personnel and Training Policies and Procedures Manual, Standards of Conduct, Policy No. 1.60, § VII, D.3.a. In the Group III written notice, the Department stated that prior to issuing this decision it had taken into consideration Tatum's nine year tenure and his job performance. The Department explained that "due to the regulatory responsibilities of [Tatum's] position, the Department and the public must be able to rely on the accuracy and truthfulness of documents produced by individuals occupying a position of public trust." As a result of Tatum's falsification of his employment records and leave reports, the Department concluded that Tatum was no longer a trusted employee and that removal was the appropriate sanction.

Tatum requested a grievance hearing before an administrative hearing officer pursuant to Code § 2.2-3004. At the grievance hearing, Tatum asserted that he had "mistakenly" entered personal sick leave on the documents because the document contained no code for "family and personal leave." At the time Tatum completed the documents, he had accrued sufficient family and personal leave to cover the absence.

The hearing officer rejected Tatum's contention that he had "mistakenly" reported his November 20 and 21 absences as sick leave because he had previously completed leave documents using

- 4 -

the correct code for family and personal leave.  The hearing officer also considered mitigating circumstances in deciding whether to reduce the Department's disciplinary action against Tatum to a sanction less severe than termination.[1]  The hearing officer found that Tatum's "favorable work performance and approximately nine years of employment with the Commonwealth form[ed] a sufficient basis to reduce [Tatum's] discipline from a Group III written notice with removal to a Group III written notice without removal."  The hearing officer declined to award Tatum back pay because he upheld the Group III written notice and because Tatum had also received a Group II written notice.  The hearing officer ordered the Department to reinstate Tatum to his job.  The hearing officer rejected the Department's argument that because Tatum had failed to fully cooperate with its investigation he had aggravated the situation and prohibited mitigation of the discipline against him.  The hearing officer

_____

[1] In the Personnel Manual, Group III offenses include "[f]alsifying any records, including, but not limited to, vouchers, reports, insurance claims, time records, leave records, or other official state documents."  Policy No. 1.60, § V, B.3.b.  P&PM, the Personnel Manual, provides that the normal disciplinary action for a Group III offense is the issuance of a Written Notice and discharge, Policy No. 1.60, § VII, D.3.a. but also provides that agencies may reduce disciplinary action based on mitigating circumstances such as: "conditions that would compel a reduction in the disciplinary action to promote the interests of fairness and objectivity; or . . . an employee's long service or otherwise satisfactory work performance."  Policy No. 1.60, § VII, C.1.  It further provides that as alternatives to discharge, "[m]itigating circumstances may result in an employee's demotion, transfer and/or suspension . . . ."  P&PM, Policy No. 1.60, VII, C.2.a.

ruled that he was required to consider the aggravating circumstances existing at the time of the events giving rise to the disciplinary action and that Tatum's behavior subsequent to those events could not serve as aggravating circumstances.

The hearing officer denied the Department's request for reconsideration. The hearing officer ruled that because a grievance hearing is de novo the hearing officer decides the dispute on an independent review of the evidence as if the Department had made no disciplinary determination. The hearing officer rejected the Department's argument that because the Personnel Manual states that "agencies may reduce the disciplinary action if there are mitigating circumstances," Policy No. 1.60, § VII, C., a hearing officer has no authority to mitigate discipline. In so ruling, the hearing officer held that the Department's authority to consider mitigating circumstances is not exclusive and a de novo hearing necessarily requires an independent review of the facts and application of legal principles. The hearing officer noted that he was required to determine whether the Department presented sufficient evidence to support the level of disciplinary action taken, and if so, whether sufficient mitigating circumstances existed to justify a reduction in the disciplinary action.

The hearing officer also ruled that "aggravating circumstances would normally be considered when determining whether fairness requires a reduction of discipline." However,

- 6 -

he further ruled that determining whether "[a]ggravating circumstances [exist] must be construed narrowly because their consideration arises only in the context of mitigation." The hearing officer specifically rejected the Department's argument that Tatum's failure to cooperate with its investigation of his conduct was an aggravating circumstance. The hearing officer found that "[n]o evidence was presented suggesting [Tatum] had a duty to cooperate with the [Department's] investigation." The hearing officer found that, to the extent that Tatum had any such duty, his refusal to cooperate was reasonable under the circumstances. The hearing officer also found that Tatum's separate Group II written notice relating to a conflict of interest concerning his outside employment could not serve as an aggravating circumstance in considering Tatum's Group III written notice. The hearing officer ruled that the Group II written notice was only relevant with respect to the accumulation of discipline. Thus, "the [h]earing [o]fficer [gave] less weight to the Group II Written Notice that [Tatum] failed to appeal than the [h]earing [o]fficer would otherwise have given had [Tatum] had a pattern of disciplinary action."

The hearing officer concluded as follows:

> The [Department] argues that it can no longer trust [Tatum] to do his job because he falsified leave. No evidence was presented suggesting [Tatum] ever falsified any of his inspection duties or records. Indeed, the evidence showed that [Tatum] was very good at his job and took it seriously.

> While it may be factually true that the [Department's] Party Designee no longer trusts [Tatum's] work product, no evidence was presented suggesting that his conclusion was reasonable or appropriate. The [Department's] assumption that one act of falsification forever condemns [Tatum's] entire work product is inappropriate.
>
> After giving due consideration to the [Department's] judgment, the Hearing Officer finds that its judgment was in error. The [Department] based its decision to terminate . . . on its false conclusion that it could no longer trust [Tatum] to perform his inspection duties. Consequently, the [Department's] decision to terminate was inappropriate.

The Department requested administrative review of the hearing officer's decision by the Director of the Department of Employment Dispute Resolution and by the Director of the Department of Human Resources Management. The Director of the Department of Employment Dispute Resolution found that the hearing officer did not abuse his discretion or exceed his authority under either the State Grievance Procedure or the Hearing Officer Rules. He ruled that the hearing officer was entirely within his authority to give the Group II written notice less weight than the Department may have given it in determining whether to uphold or reverse Tatum's termination. The Director of the Department of Human Resources Management found the hearing officer did not violate the Personnel Policy No. 1.60 in his application of the provisions of that policy and, therefore, she had no basis upon which to interfere with the hearing officer's decision. These decisions, which were rendered on administrative review to determine whether the hearing officer's decision is

- 8 -

consistent with state or agency policy and whether it complies with the grievance procedure, are final and not appealable. See Department of Employment Dispute Resolution, Grievance Procedure Manual, § 7.2(c); see also Code §§ 2.2-1001(5) and 2.2-3003(G). Code § 2.2-3003(A) requires the DEDR to develop a three-tiered grievance procedure for state employees, which includes a formal hearing.

Pursuant to Code § 2.2-3006(B), the Department appealed the hearing officer's decision to the circuit court. Code § 2.2-3006(B) provides in pertinent part that "[w]ithin thirty days of a final decision, a party may appeal on the grounds that the determination is contradictory to law . . . ." (Emphasis added). The circuit court hears the appeal "on the record," and may reverse, affirm, or modify the hearing officer's decision. Code § 2.2-3006(B).

The Department argued before the circuit court that the hearing officer's decision to mitigate the disciplinary action and order Tatum's reinstatement was without authority and contrary to the law, because it "ignor[ed] the express legal directive of Code § 2.2-3004(B) that [the Department], not the Hearing Officer, has the exclusive right to manage its employees." The Department also argued that the hearing officer ignored aggravating circumstances based on the fact that Tatum failed to cooperate with the Department's investigation of his misconduct regarding the outside employment. The Department contended that "[h]ad the Hearing Officer found that the evidence did not support falsification of the time sheets, then he would have had the authority to reinstate." The Department further

argued that the hearing officer failed to recognize that it had considered mitigating circumstances, including Tatum's tenure and past work performance when it determined what sanction to impose, but had determined that such mitigating factors were outweighed by aggravating circumstances, including Tatum's failure to cooperate with the investigation, and his outside employment which resulted in a Group II written notice. In addition, the Department argued that the hearing officer erred in refusing to consider the Group II written notice as an aggravating circumstance because it arose out of the same general facts as the Group III written notice. The Department asserted that "[t]he Hearing Officer has substituted his judgment for that of the [Department], by reinstating an employee who has breached his trust with his superiors to a position with – quasi-law enforcement and regulatory powers."

The circuit court reversed the hearing officer's decision which ordered Tatum's reinstatement, finding that the decision was contrary to law. In so deciding, the circuit court ruled as follows:

> [I]n his written decision, the hearing officer, while finding that Tatum intentionally falsified the leave forms, observed that there was no evidence of falsifying inspection records and found that "one act of falsification" in light of an otherwise uneventful, discipline free course of employment for nine years was not justification for the agency to no longer trust Tatum to carry out his inspection duties. I do not believe that the hearing officer is charged with overriding a management decision with respect to discipline upon a finding of misconduct unless the discipline meted out is arbitrary

or contrary to law as in Siewert[v. VCU, Case No. HS-21-4 (Richmond Cir. Ct., 2/14/02)]. On examination of the record there is nothing to suggest that the agency came to its decision to terminate blindly or without a reasoned basis based on what went on during the course of its investigation, the nature of the infractions and Tatum's admissions. Here, we have an instance of the hearing officer substituting judgment regarding discipline, although reasonable, against that of the agency's which is also reasonable. Compared against the applicable legal standard namely, the agency's "exclusive right to manage [its] affairs and operations" See Va. Code § 2.2-3004(B), this difference of view must bend in favor of the agency determination of the proper sanction to be imposed for the infraction involved because the agency determination was reasonable and not arbitrary or contrary to law.

Pursuant to Code § 17.1-405(1)(ii), Tatum appealed to this Court from the circuit court's decision. On appeal, Tatum contends the circuit court erred in reversing the hearing officer's decision reinstating Tatum to his job. Tatum argues that the circuit court erroneously relied upon Code § 2.2-3004(B) for providing the applicable legal standard for its review. Tatum argues that under the "Rules for Conducting Grievance Hearings," VI, B.1. "the hearing officer may consider mitigating or aggravating circumstances to determine whether the level of discipline was too severe or disproportionate . . ." and under the "Grievance Procedure Manual" the hearing officer "may order appropriate remedies, including . . . [r]einstatement . . . ." Tatum argues that the circuit court erred in finding that the Department must prevail because "its [administrative] determination was reasonable and not arbitrary or contrary to

- 11 -

law."  Tatum contends the circuit court erred in relying upon Code § 2.2-3004(B) for providing the applicable standard for review, which statute provides that "[m]anagement reserves the exclusive right to manage the affairs and operations of state government."  Rather, Tatum argues Code § 2.2-3005(D)(iii) controls, which statute states that "[t]he decision of the hearing officer . . . shall . . . be final and binding if consistent with law and policy."  Tatum contends that by applying that controlling statute, the circuit court was required to uphold the hearing officer's decision.  Tatum asks this Court to reverse the circuit court's decision and reinstate the hearing officer's decision of a Group III written notice without removal.

STANDARD OF REVIEW

Tatum did not appeal the hearing officer's finding that he committed a Group III offense.  Therefore, that finding is final and binding upon us.  With respect to the applicable standard of review for appeals from a grievance proceeding, the State Grievance Procedure, Code §§ 2.2-3000 et seq., defines the powers and duties of a hearing officer.  The hearing officer is charged with conducting a hearing upon a formal written grievance filed by a covered non-probationary state employee.  See Code §§ 2.2-3003 and 2.2-3005.  The hearing officer shall receive probative relevant, material, non-privileged evidence, rebuttals and cross-examinations, rule upon offers of proof, and oversee a verbatim recording of the evidence.  See Code § 2.2-3005(C)(5). The hearing officer orders appropriate remedies, which may include "reinstatement, back pay, full reinstatement of fringe benefits and seniority rights, or any combination of these

- 12 -

remedies" and shall "[t]ake other actions as necessary or specified in the grievance procedure."  Code § 2.2-3005(6) and (7).  The hearing officer's decision "shall (i) be in writing, (ii) contain findings of fact as to the material issues in the case and the basis for those findings, and (iii) be final and binding if consistent with law and policy."  Code § 2.2-3005(D).

In <u>Virginia Dep't of State Police v. Barton</u>, 39 Va. App. 439, 573 S.E.2d 319 (2002), this Court recognized that:

> [t]hese statutes clearly provide the hearing officer is to act as fact finder and the Director of the Department of Human Resources Management is to determine whether the hearing officer's decision is consistent with policy.  In the grievance process, neither of these determinations is subject to judicial review, but only that part of the grievance determination "contradictory to law."

<u>Id.</u> at 445, 573 S.E.2d at 322.

Upon judicial review from the administrative grievance hearing, the circuit court, based on the record and sitting without a jury, may affirm, reverse or modify the hearing officer's decision.  Code § 2.2-3006(A).  "[T]he only grounds of appeal of the hearing officer's decision [to the circuit court] is 'that the determination is contradictory to law.'"  <u>Barton</u>, 39 Va. App. at 445, 573 S.E.2d at 322 (citation omitted).

Thus, the Department, the party that appealed the hearing officer's decision to the circuit court, was required to "specify how that decision [was] 'contradictory' to law and what 'law' [was] thereby being contradicted."  <u>Id.</u> at 445-46, 573 S.E.2d at 322.  In the circuit court, the Department was required to "identify [a] constitutional provision, statute, regulation or

judicial decision which the [hearing officer's] decision contradict[ed]." Id. at 446, 573 S.E.2d at 323. Thus, the circuit court's only ground for reversing the hearing officer's decision was that the hearing officer's decision was contradictory to law. Accordingly, we must determine whether the circuit court followed the correct standard of review and whether it reached the correct legal conclusion.

ANALYSIS

The circuit court ruled that the hearing officer's decision was contrary to law because the hearing officer overrode the Department's "management decision" with respect to the appropriate discipline to impose upon a finding of Group III misconduct, where the Department's decision was not arbitrary or contrary to law. In so ruling, however, the circuit court did not apply the correct standard for reviewing the decision of the hearing officer.

Where an agency removes or dismisses an employee for misconduct, such as in this case, and a grievance hearing is requested, the agency is required to prove "by a preponderance of the evidence that the action was warranted and appropriate under the circumstances." See Grievance Procedure Manual § 5.8(2). While the hearing officer is not a "super-personnel officer" and should give appropriate deference to actions in agency management that are consistent with law and policy, as to issues involving the appropriate discipline, "the hearing officer reviews the facts de novo . . . as if no determinations had been made yet, to determine whether the cited actions occurred, whether they constituted misconduct, and whether there were mitigating circumstances to justify reduction or removal of the disciplinary action or aggravating circumstances to justify the disciplinary action." See Rules for Conducting Grievance Hearings, VI(B) (effective July 1, 2001). The hearing officer is expressly authorized to reduce the discipline if the officer finds that the level or severity of discipline for the misconduct was too severe. Id. The hearing officer is charged with the duty of

taking evidence and ordering appropriate remedies, which may include reinstatement.  See Code § 2.2-3005.

Here, the circuit court's reliance upon the general language of Code § 2.2-3004(B) unduly limited the hearing officer's express authority as set forth by statute and the rules and procedures promulgated pursuant to the directive of Code § 2.2-3003(A).  No statute or rule provides that the hearing officer may order reinstatement only where the agency's decision was arbitrary or contrary to the law.  To the contrary, Code § 2.2-3005 provides that the hearing officer may make a decision as to the appropriate sanction, independent of the agency's decision.

"[T]he only grounds of appeal of the hearing officer's decision is 'that the determination is contradictory to law.' . . .  Code § 2.1-116.07:1(B) ([now] § 2.2-3006(B)) represents the first and only appearance of the phrase 'contradictory to law' in the Code of Virginia as a standard of appellate review." Barton, 39 Va. App. at 445, 573 S.E.2d at 322 (citation omitted). "By its plain reading, Code § 2.1-116.07:1 [now Code § 2.2-3006] makes it incumbent upon the party appealing the hearing officer's decision to specify how that decision is 'contradictory' to the law and what 'law' is thereby being contradicted." Id. at 445-46, 573 S.E.2d at 322.  "'Law' is the 'aggregate of legislation, judicial precedents and accepted legal principles.'" Id. at 446, 573 S.E.2d at 323 (citation omitted).  Thus, the circuit court erred in ruling that its judicial review of the Department's decision and the hearing officer's decision ultimately turned upon the overriding principle that the agency

has the "exclusive right to manage its affairs and operations, and that the hearing officer substituted his judgment for that of the agency." The appropriate inquiry for the circuit court was whether the hearing officer's decision was contradictory to law. Id. at 447, 573 S.E.2d at 323.

On appeal to the circuit court, the Department failed to establish that the hearing officer's decision was contradictory to any law. Contrary to the Department's contentions, our review of the hearing officer's January 2 and 16, 2002 decisions discloses that the hearing officer reviewed de novo the aggravating circumstances relied upon by the Department to support disciplinary action, together with the mitigating circumstances, and ordered that Tatum be reinstated to his employment position. The adjudicative acts of the hearing officer were grounded in and consistent with the provisions of Code §§ 2.2-3003 and 2.2-3005, as well as the Rules for Conducting Grievance Hearings, VI(B). In short, they were not contradictory to law. Moreover, the assertion by the Department that the hearing officer did not follow state policy and procedures in considering or weighing aggravating or mitigating circumstances was rejected by the Director of the Department of Employee Dispute Resolution and by the Director of the Department of Human Resources Management. The circuit court was bound by those decisions because they are final and not subject to judicial review as a matter of law. See Department of Employment Dispute Resolution, Grievance Procedure Manual, § 7.2(c); see also Code §§ 2.2-1001(5) and 2.2-3003(G). "The General Assembly has clearly vested review of policy issues involved in employee

- 17 -

grievances in the Department of Human Resource Management, and not in the courts." Barton, 39 Va. App. at 445, 573 S.E.2d at 323.

The circuit court's finding in this case that a hearing officer's decision to mitigate discipline should be reversed on the ground that it conflicted with the general principle set forth in Code § 2.2-3004(B) would nullify the express power granted to a hearing officer to decide de novo whether to mitigate a disciplinary action and to order reinstatement.

Accordingly, because the Department failed to establish that the hearing officer's decision contradicted any "law," we reverse the circuit court's decision overturning the hearing officer's decision, and reinstate the hearing officer's decision.

Reversed and final judgment.