COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Felton and Kelsey
Argued at Chesapeake, Virginia

COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF CORRECTIONS

v.      Record No. 2703-04-1

ROBERT E. DOYLE                                    MEMORANDUM OPINION[*]
                                                   BY JUDGE D. ARTHUR KELSEY
COMMONWEALTH OF VIRGINIA,                          JULY 5, 2005
  DEPARTMENT OF CORRECTIONS

v.      Record No. 2704-04-1

RONALD A. TEMPLE

            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                     Norman Olitsky, Judge Designate

                 Joel C. Hoppe, Assistant Attorney General (Public Safety
                 & Enforcement Division, on briefs), for appellant.

                 C. Gerard Thompson (Cooper, Spong & Davis, on briefs),
                 for appellees.

        The Virginia Department of Corrections (DOC) appeals circuit court orders reversing an

agency personnel decision adverse to two employees, Robert E. Doyle and Ronald A. Temple.

Finding the circuit court acted outside the boundaries of judicial review authorized by the

Grievance Procedure Act, Code § 2.2-3006(B), we reverse the circuit court's orders and reinstate

the agency's personnel decision.

                                              I.

        DOC employed Doyle and Temple at the Indian Creek Correctional Center, a state

penitentiary in Chesapeake.  Doyle worked as a site technician, providing therapeutic treatment

to inmates.  Temple worked as a building and grounds superintendent.  Instructed by a former

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

assistant warden to do so, Doyle had several years earlier installed hidden microphones in counseling rooms at the prison. The microphones were never activated, and thus, no counseling sessions were ever recorded.

A DOC investigator later discovered the microphones and told Doyle that he had committed a crime by installing them. Without informing his superiors, Doyle decided he would remove the microphones and place them in storage. He asked for and received Temple's commitment to help him do so. Before accomplishing the task, however, an internal affairs officer questioned them about the situation. Both Doyle and Temple admitted that they had agreed among themselves to remove the microphones.

Upset that Doyle and Temple would agree to take this action without bringing it to her attention, the warden issued a disciplinary notice to Doyle and Temple. The "Type of Offense" checkbox on the notice form identified the offense as a "Group II" disciplinary infraction. Beneath this checkbox appears a larger box, asking that the employer "briefly describe the offense and give an explanation of the evidence." The warden provided this summary:

> Unauthorized use of or misuse of state property; Conspiring to Remove State Property Without Proper Authorization. On April 19, 2003, you and a fellow employee conspired to come to the institution to remove electronic audio equipment from Smith Hall with no notice or approval from supervision. Internal Affairs (IA) investigator received information prior to your carrying out the plan and notified the Warden. You admitted to the IA Investigator and the Warden that you were planning this unauthorized action. This was a serious violation of Employee Standards of Conduct and Performance; [sic] and Standards of Ethics and Conflict of Interest.

Except for issuing this notice, the warden took no other disciplinary action against either employee.

Doyle and Temple objected to the notice and filed grievances seeking its withdrawal. The process led to a hearing before an administrative hearing officer appointed by the

Department of Employment Dispute Resolution. In his October 2003 decision, the hearing officer agreed with the factual allegations of the warden and upheld the warden's issuance of a Group II disciplinary notice.[1] In the course of his opinion, however, the hearing officer took issue with the warden's summary description of the reprimanded conduct as "Unauthorized use of or misuse of state property; Conspiring to Remove State Property Without Authorization." What Doyle and Temple actually did, the hearing officer reasoned, "is better described as planning to uninstall equipment without proper authority." The hearing officer recommended that the notice be so amended. DOC raised no objection to this amendment.

In a motion to reconsider, Doyle and Temple argued that the hearing officer should have dismissed the Group II notice rather than amending it. The hearing officer disagreed:

> Procedural due process in an administrative proceeding does not require that the Agency establish each and every word used in a Written Notice. The Agency is only obligated to place Grievant on reasonable notice of the facts upon which the Agency believes Grievant should be disciplined. There is little doubt that the Agency informed Grievant of the basis for its disciplinary action. Although the wording of the Written Notice was not artfully drawn, the Agency presented sufficient facts to support its conclusion that Grievant should be given a Group II Written Notice.

Claiming a violation of state policy, Doyle and Temple requested that the Department of Human Resource Management (DHRM) review the hearing officer's decision pursuant to Code § 2.2-3006(A). Echoing the hearing officer's reasoning, DHRM explained that the point of the hearing was to review "the facts to determine whether the cited actions constitute misconduct

---

[1] DOC personnel policies divided disciplinary actions into three categories, ranked by severity. Group I offenses "include types of behavior least severe in nature but which require correction in the interest of maintaining a productive and well-managed work force." DOC Procedures Manual § 5-10.15. Group II offenses "include acts and behavior which are more severe in nature and are such that an accumulation of two Group II offenses should normally warrant removal." Id. at § 5-10.16. Group III offenses "include acts and behavior of such a serious nature that a first occurrence should normally warrant removal." Id. at § 5-10.17.

and whether there are mitigating circumstances to justify reduction or removal of the disciplinary action." The hearing officer's amendment of the disciplinary notice, DHRM concluded, fully complied with state personnel policy. Neither Doyle nor Temple requested further review of the hearing officer's decision by the Department of Employee Dispute Resolution (DEDR).

Doyle and Temple sought judicial review of the final agency decision pursuant to Code § 2.2-3006(B). The circuit court reversed the hearing officer's decision and dismissed the warden's Group II disciplinary notice as "contrary to law." The court found no fault with the factual findings of the hearing officer or the conclusion that the employees' conduct warranted a Group II disciplinary notice. Instead, the court held that the hearing officer had no power to amend the notice under Code §§ 2.2-3005 and 2.2-3005.1.

DOC appeals to us, arguing that the circuit court erred as a matter of law when it reversed the hearing officer's decision and vacated the warden's Group II disciplinary notice issued to Doyle and Temple.

II.

Under the Grievance Procedure Act, an administrative hearing officer serves primarily as a factfinder. Tatum v. Va. Dept. of Agr. & Consumer Servs., 41 Va. App. 110, 121, 582 S.E.2d 452, 458 (2003) (citation omitted). The statute gives DHRM the responsibility to decide "whether the hearing officer's decision is consistent with policy." Id. (citation omitted). By doing so, the "General Assembly has clearly vested review of policy issues involved in employee grievances in the Department of Human Resource Management, and not in the courts." Va. Dep't of State Police v. Barton, 39 Va. App. 439, 446, 573 S.E.2d 319, 323 (2002) (noting that an "[i]nterpretation of state agency policy is itself a matter of policy" outside the scope of judicial review). The statute also vests with the DEDR final authority over "all matters related to

procedural compliance" with the grievance procedure. Code § 2.2-1001(5). This too is beyond judicial review. Tatum, 41 Va. App. at 124, 582 S.E.2d at 459.

A grievant may seek judicial review only if an agency decision is "contradictory to law." Code § 2.2-3006(B). In this context, the "law" represents "the aggregate of legislation, judicial precedents and accepted legal principles." Tatum, 41 Va. App. at 124, 582 S.E.2d at 459 (internal quotation marks, brackets, and citations omitted). The party challenging the hearing officer's decision must "specify how that decision is 'contradictory' to the law and what 'law' is thereby being contradicted." Id.

In this case, the circuit court held the hearing officer's decision was "contradictory to law" because it violated two statutes, Code §§ 2.2-3005 and 2.2-3005.1. Neither statute, in our opinion, supports this holding.

Code § 2.2-3005 describes the general duties of a hearing officer. In addition to his specified powers, the hearing officer may take all "other actions as necessary or specified in the grievance procedure." Code § 2.2-3005(C)(7). The administrative rules governing the grievance hearing authorize the hearing officer to "uphold or reverse the disciplinary action challenged by the grievance, or, in appropriate circumstances, *modify* the action" taken by the agency. DEDR Rules for Conducting Grievance Hearings § VI(A) (emphasis added). The power to modify a disciplinary notice necessarily subsumes the power to restate it more accurately, particularly when doing so changes none of the underlying factual findings.

The General Assembly enacted Code § 2.2-3005.1 in 2004. See 2004 Va. Acts, ch. 674 (S.B. 201). The hearing officer issued both his initial and reconsideration decisions in 2003. Because retroactive laws are disfavored, "a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." Berner v. Mills, 265 Va. 408, 413, 579 S.E.2d 159, 161 (2003); see also Taylor v. Commonwealth, 44 Va. App. 179, 184, 604 S.E.2d 103, 105

(2004) ("The general rule is that statutes are prospective in the absence of an express provision by the legislature." (citation omitted)). Code § 2.2-3005.1, therefore, does not apply to this case.

Even so, Doyle and Temple argue, non-statutory legal principles independently support the circuit court's decision. The only such principle arguably applicable here, however, is procedural due process: the right of a state employee with a property interest in his employment to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Garraghty v. Jordan, 830 F.2d 1295, 1299 (4th Cir. 1987).

In this case, the hearing officer accepted the underlying factual allegations in the warden's notice and agreed with the warden's conclusion that this conduct constituted a Group II disciplinary infraction. The hearing officer and warden disagreed only on how to describe the infraction. Given its limited nature, the hearing officer's modification of the warden's notice did not prejudice Doyle and Temple — a point they concede on appeal. The same witnesses would have testified, the same exhibits admitted, and the same arguments made. The hearing officer's modification, therefore, did not violate procedural due process. See generally Leftwich v. Bevilacqua, 635 F. Supp. 238, 241 (W.D. Va. 1986) (finding no procedural due process violation where the disciplinary notice enabled the employee to understand the accusation against him).

III.

The hearing officer's amendment of the disciplinary notice did not violate any statute, judicial precedent, or accepted legal principle. For this reason, the circuit court erred when it reversed the hearing officer's decision and vacated the warden's Group II disciplinary notice.

Reversed and final judgment.