COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Haley
Argued at Richmond, Virginia


JOSEPHINE LEE
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0976-09-2                    JUDGE JAMES W. HALEY, JR.
                                                      FEBRUARY 2, 2010
SOUTHSIDE VIRGINIA TRAINING CENTER


              FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                            Thomas V. Warren, Judge

          Richard F. Hawkins, III (The Hawkins Law Firm, on brief), for
          appellant.

          Gregory C. Fleming, Senior Assistant Attorney General (William C.
          Mims, Attorney General; Maureen Riley Matsen, Deputy Attorney
          General; Peter R. Messitt, Senior Assistant Attorney General, on
          brief), for appellee.



                                       I.

       Pursuant to the provisions of the State Grievance Procedure, Code § 2.2-3000, *et seq.*, a

hearing officer sustained the termination of Josephine Lee as a Direct Support Associate at the

Southside Virginia Training Center, a facility operated by the Department of Mental Health,

Mental Retardation and Substance Abuse Services.  The officer found as facts, supported by the

preponderance of the evidence, that Lee had physically abused severely mentally retarded

residents, in violation of specific departmental instructions prohibiting such abuse.  Lee appealed

to the circuit court, as provided by Code § 2.2-3006(B).  That code section authorizes a circuit

court to determine, based solely on the administrative record, if the hearing officer's decision "is

contrary to law."  In that appeal, Lee maintained that the hearing officer's decision was contrary

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to law because: (1) It relied upon "material evidence obtained solely through the administration of an unlawful polygraph examination," in violation of designated statutes; and (2) it relied upon "perjured testimony." By order entered April 8, 2009, the circuit court affirmed the termination. We affirm the decision of the circuit court.

II.

FACTS

A trainee co-worker saw Lee physically abuse several residents on October 10 and 11, 2007, and, apparently on October 12, reported the incidents. An investigation opened. Lee denied any incidents of abuse and had "no objection" to taking a polygraph exam. After the test, and being advised of her failure, she signed a written statement acknowledging that she had, in fact, abused at least one resident. On December 27, 2007, Lee was given a written notice advising her of the termination of her employment with Southside Virginia Training Center. This notice further advised Lee of her right to appeal the decision pursuant to the state grievance procedure. Lee appealed. The Department of Employment Dispute Resolution appointed a hearing officer to conduct a grievance hearing in Lee's case. This proceeding was held on May 29, 2008.

During Lee's grievance hearing, the trainee and another witness testified they had observed Lee abusing residents on several occasions and Lee's written admission she had abused at least one resident was admitted into evidence. Lee denied committing any abuse. The polygraph examiner did not testify, and neither the results nor an analysis of the polygraph examination were introduced in evidence. Accordingly, the hearing officer makes no mention of such testimony, results or analysis in his written decision. In finding that the abuse occurred and that the termination was justified, the hearing officer wrote that "positions taken by [Lee] during

the investigation and hearing conflict with documents she has signed, defy logic and common sense and undercut her positions and her credibility."

Lee appealed to the circuit court, which affirmed the hearing officer's decision. This appeal followed.

III.

<u>ANALYSIS</u>

A) Whether the Hearing Officer Correctly Considered Lee's<br>Written Statements Made After the Polygraph Test

Pursuant to Code § 2.2-3006(B), a party may appeal to the circuit court from the decision of a hearing officer under the state grievance procedure. Code § 17.1-405(1) authorizes a further appeal to this Court. However, our Supreme Court has described our standard of review for decisions of this kind as "very narrow . . . ." <u>Va. Polytechnic Inst. & State Univ. v. Quesenberry</u>, 277 Va. 420, 429, 674 S.E.2d 854, 858 (2009). "[B]ecause the General Assembly granted to the circuit courts only the authority to consider whether the final determination of the hearing officer is 'contrary to law,' we are likewise limited to such review in considering whether the trial court erred in its determination." <u>Pound v. Dep't of Game and Inland Fisheries</u>, 40 Va. App. 59, 64, 577 S.E.2d 533, 535 (2003). In such a review, an appealing party must "'identify [a] constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicted.'" <u>Tatum v. Va. Dep't of Agric. & Consumer Servs.</u>, 41 Va. App. 110, 122, 582 S.E.2d 452, 458 (2003) (quoting <u>Virginia Dep't of State Police v. Barton</u>, 39 Va. App. 439, 446, 573 S.E.2d 319, 323 (2002)).

Lee maintains that this Court should reverse the circuit court's decision because of two statutes, specifically Code § 8.01-418.2 and Code § 40.1-51.4:4. Code § 8.01-418.2 prohibits the admission of "the analysis of any polygraph test charts produced during any polygraph examination administered to a party . . ." in a state grievance proceeding. Code § 40.1-51.4:4(D)

- 3 -

reads in part that: "The analysis of any polygraph test charts produced during any polygraph examination administered to a party . . . shall not be submitted, referenced, referred to, offered or presented in any manner in any [state grievance] proceeding . . . ."

Initially, we note that neither statute prohibits the use of a polygraph examination as an investigative tool involving actions by state employees. Rather the "analysis" of any polygraph test is inadmissible in state grievance proceedings. As noted, here neither the testimony of the examiner nor the results or analysis of the examination was offered in evidence before the hearing officer.

Faced with this fact, Lee argues that, "it logically follows . . ." that Lee's written statement, which was produced subsequent to the examination, was inadmissible "like the Fourth Amendment's exclusionary rule . . . ." We disagree. First, the remedy of exclusion for evidence obtained in violation of the constitution applies only to criminal cases, not to civil cases. Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 363 (1998) ("we have repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials"); see also Immigration & Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032, 1034 (1984) (exclusionary rule does not apply to civil deportation proceedings); Janis v. United States, 428 U.S. 433, 454 (1976) (exclusionary rule does not apply to civil proceedings by or against the United States).

Even in criminal cases, where the analysis or results of polygraph examinations are uniformly inadmissible, our Supreme Court has drawn a distinction between the analysis or results of a polygraph examination and statements made to a polygraph operator. See Jones v. Commonwealth, 214 Va. 723, 727, 204 S.E.2d 247, 249-50 (1974).

> We do not agree with counsel for defendant that because polygraph testing is not admissible, any statement by defendant made to a polygraph operator in the pretesting conditioning period, or as a preliminary to the testing, should also be excluded. The same

- 4 -

> reasons and considerations for excluding from the evidence the results of the lie detector or polygraph test do not apply to voluntary oral statements which are not made during the actual administering of such a test.

Id. See also Turner v. Commonwealth, 278 Va. 739, 743-44, 685 S.E.2d 665, 667-68 (2009) ("Any voluntary statements or admissions made by a person being tested remain admissible subject to the ordinary rules of evidence. Our holding is limited to the exclusion of the opinions of the polygraph operator or others purporting to offer expert opinion interpreting the test results.").

Other jurisdictions to consider this question have reached similar conclusions. "The results of a polygraph examination are excluded because of their unreliability. Voluntary statements by the accused are not so regarded. Their reliability does not depend on the validity of the polygraph test or the operator's skill in conducting the test or interpreting its results." State v. Blosser, 558 P.2d 105, 107-08 (Kan. 1976). "The statements made by the defendant to the polygraph technician, if edited to remove references to the polygraph examination itself, are admissible." People v. Cummings, 706 P.2d 766, 771 (Colo. 1985). See also Commonwealth v. Hall, 14 S.W.3d 30, 31-32 (Ky. Ct. App. 1999); State v. Marini, 638 A.2d 507, 512 (R.I. 1994); People v. Ray, 430 N.W.2d 626, 628-29 (Mich. 1988); State v. Erickson, 403 N.W.2d 281, 283 (Minn. Ct. App. 1987); State v. Smith, 715 P.2d 1301, 1309-10 (Mont. 1986); State v. Bowden, 342 A.2d 281, 285 (Me. 1975). But see State v. Davis, 751 N.W.2d 332 (Wis. 2008).[1]

---

[1] The reason the Supreme Court of Wisconsin rejected the admissibility of similar testimony in Davis was not any common law principle akin to the exclusionary rule, which Lee urges us to adopt, but rather the plain language of a statute, which provides that: "[a] person has a privilege to refuse to disclose and to prevent another from disclosing any oral or written communications during or any results of an examination using an honesty testing device in which the person was the test subject." Wis. Stat. § 905.065(2). Unlike the Wisconsin statute examined in Davis, Code § 8.01-418.2 and Code § 40.1-51.4:4 are written more narrowly; they only forbid the admission into evidence of the "analysis" of any polygraph test.

The validity of Lee's argument rests on the premise that *any* statements made during the course of a polygraph examination are inadmissible in a state grievance hearing according to legal principles akin to the exclusionary rule. Yet Lee provides no authority – and we can find none – which establishes such a rule. Instead, our precedents draw a distinction between the results of a polygraph test and voluntary statements made by a person being tested. Because these precedents hold that the first category is inadmissible, and the second admissible, we must reject Lee's argument that the circuit court erred in affirming the hearing officer's decision on account of the hearing officer's apparent consideration of Lee's written statement that she had abused at least one resident.

### B) Whether the Hearing Officer Relied On "Perjured" Testimony

Under Code § 2.2-3000 *et seq.*, the State Grievance Procedure, an administrative officer serves as the fact finder. The hearing officer's decision "shall contain findings of fact as to the material issues in the case." Code § 2.2-3005.1(C); see also Tatum, 41 Va. App. at 121, 582 S.E.2d at 458; Barton, 39 Va. App. at 445, 573 S.E.2d at 322 ("These statutes clearly provide the hearing officer is to act as fact finder . . . ."). The circuit court reviews the decision of the hearing officer "on the record." Code § 2.2-3006(B). And in reviewing the hearing officer's decision, the circuit court is not permitted to reweigh the evidence. See Commonwealth v. Needham, 55 Va. App. 316, 326, 685 S.E.2d 857, ___ (2009). Thus, in this case "[t]he [circuit] court's function was limited to considering the parties' legal arguments based upon the agency record." Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997).

According to the agency record, the hearing officer found as a fact that: "The testimony of the witnesses called by the agency, including the Trainee, was both credible and consistent on the material issue before the hearing officer of whether [Lee] abused clients." Before the hearing officer reached this conclusion, counsel for Lee introduced four exhibits and called three

witnesses on her behalf. Both sides also had the opportunity to cross-examine opposing witnesses. See Code § 2.2-3004(F).

Lee argues that the trial court's ruling violated her due process rights under the federal and Virginia Constitutions because, according to Lee, the hearing officer relied on perjured testimony. It is true that the use of perjured testimony may implicate due process considerations. See e.g. Napue v. Illinois, 360 U.S. 264, 269-72 (1959) (failure of prosecutor to correct testimony he knew to be false violates due process). But the record before us does not demonstrate that the trainee perjured herself when she testified that Lee abused residents of Southside Virginia Training Center.

Lee's argument to the contrary emphasizes an alleged discrepancy between the trainee's testimony in her case and the trainee's testimony in the grievance hearing of a co-worker, whom the trainee's testimony also apparently implicated in the abuse of residents on October 11, 2007. According to the hearing officer in Lee's case, the trainee testified that she "received a verbal counseling from her Program Director" because she apparently did not report Lee's actions until the next day, October 12. Lee contends that the trainee testified differently at Lee's co-worker's grievance hearing. But there is no evidence in the agency record that she did so.[2] No evidence suggests that the trainee's testimony in Lee's grievance hearing was ever the basis for a perjury

---

[2] On brief, Lee cites appendix pages 302-04 as establishing this proposition. These pages refer to part of the transcript of Lee's argument before the circuit court. In this transcript, counsel for Lee refers to a recording of the trainee's testimony at the co-worker's grievance hearing, and apologizes for not having made arrangements to transcribe the testimony. There is no evidence that this tape recording was admitted into the administrative record in Lee's case when it was before the hearing officer. The decision in Lee's co-worker's grievance proceeding was issued on May 13, 2008, sixteen days before Lee's grievance hearing. So Lee had the opportunity to use the trainee's prior testimony in the other hearing to impeach her testimony at the administrative stage, and failed to do so. Relying on Brooks v. Arthur, 611 F. Supp. 2d 592, 597 (W. D. Va. 2009), Lee contends that we may take judicial notice of the written decision of the hearing officer who presides over the grievance hearing in the case of Lee's co-worker. But even if she is right about this, the written decision she mentions says nothing about the trainee's testimony as to whether she was disciplined for failing to report the incident immediately.

prosecution or conviction under Code § 18.2-434. Moreover, the question of whether the trainee was telling the truth was a question of fact. To endorse Lee's argument would be to adopt for this Court a fact-finding role that the General Assembly has expressly assigned to the hearing officer. <u>Barton</u>, 39 Va. App. at 445, 573 S.E.2d at 322.

IV.

<u>CONCLUSION</u>

We hold that the circuit court did not err in affirming the hearing officer's decision. The ruling of the trial court is affirmed.

<u>Affirmed.</u>