COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Powell
Argued by teleconference


RHONDA S. EARMAN

MEMORANDUM OPINION[*] BY
v.        Record No. 0292-10-2                JUDGE CLEO E. POWELL
NOVEMBER 2, 2010
VIRGINIA DEPARTMENT OF VETERANS SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

(Rhonda S. Earman, *pro se*, on briefs).  Appellant submitting on
briefs.[1]

Guy W. Horsley, Jr., Special Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General; Wesley G. Russell,
Jr., Deputy Attorney General, on brief), for appellee.


Rhonda S. Earman ("Earman") was employed by the Virginia Department of Veterans

Services ("DVS") as the administrative assistant to the Commissioner of Veterans Services.  In

October of 2008, Earman was laid off when her position was eliminated due to state budget cuts.

Pursuant to the State Grievance Procedure, Code § 2.2-3004, Earman requested and received a

grievance hearing before an administrative hearing officer.  The hearing officer made findings of

fact and determined that DVS had discriminated against Earman by misapplying the layoff

policy and ordered DVS to reapply the layoff process.  DVS appealed the hearing officer's

interpretation of the layoff policy to the Director of the Department of Human Resource

Management ("DHRM"), who determined that the hearing officer had misinterpreted the layoff

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant waived the opportunity to present oral argument.

policy and remanded the matter back to the hearing officer. On remand, the hearing officer found no discrimination on the part of DVS and vacated his earlier ruling.

Pursuant to Code § 2.2-3006(B), Earman sought judicial review of the hearing officer's modified decision. The circuit court affirmed the decision of the hearing officer. Earman appealed that decision to this Court, contending that the hearing officer and the circuit court erred in failing to find that (1) DVS used the budget cuts as a pretext for retaliation; (2) DVS violated state and internal agency retaliation policies; (3) DVS misapplied the state layoff policy; (4) her evidence was sufficient to support her discrimination claim; (5) DVS failed to fulfill its obligations to Earman after laying her off; (6) DHRM's interpretation of the state layoff policy was an attempt to cover for DVS's retaliation and avoid liability for the Commonwealth; and (7) DHRM's failure to timely issue its administrative review of the hearing officer's initial finding constituted a procedural default. For the reasons that follow, we affirm the decision of the circuit court.

## BACKGROUND

In 2006 and 2007, Earman filed a number of complaints about DVS and some of its employees with the State Office of the Internal Auditor using the Fraud, Waste, and Abuse Hotline. An internal auditor substantiated some of Earman's complaints, but the majority were found to be inconclusive or unsubstantiated.

On July 4, 2008, Earman filed an employee grievance alleging retaliation, ongoing pay discrimination, and misapplication of policy relating to pay and classification issues. Earman petitioned the agency head to qualify her grievance for a hearing. The agency head declined to do so. Earman then petitioned the Director of the Department of Employment Dispute Resolution ("EDR") to qualify her grievance for a hearing. The EDR Director also declined.

On October 14, 2008, Earman was laid off in connection with DVS's efforts to meet budget reduction goals. She timely filed a second grievance alleging that her selection for the layoff was retaliatory and that DVS misapplied the layoff policy. Earman again petitioned the agency head and the Director of EDR to qualify her second grievance for a hearing. Both requests were denied. Earman appealed the decision to the Circuit Court of the City of Richmond, which held that the second grievance qualified for a hearing because Earman had raised a sufficient question of retaliation and/or misapplication of layoff policy.

On June 15, 2009, a hearing officer heard testimony and argument from both Earman and DVS. The hearing officer issued a ruling on June 18, 2009, finding:

> While I find [DVS] acted within its discretion in identifying [Earman's] central office administrative position for layoff, and that the decision is not shown to be tainted by retaliation, I also find that [DVS's] actions, or inactions, fail to comply with the layoff policy and the obvious intent of the layoff policy.
>
>   *   *   *   *   *   *   *
>
> I do not find that the decision to eliminate [Earman's] position was pretextual. [DVS] has explained that [Earman's] position was identified for elimination because it did not involve direct services to veterans. However, [DVS] has failed to explain adequately why or how it failed to follow DHRM Policy 1.30.[2] Based on the totality of the evidence, the only explanation for [DVS's] apparent rigidness in not following DHRM Policy 1.30 appears directed to [Earman] as an individual, rather than the occupant of the position eliminated by layoff. At this point, the layoff process became tainted as it pertains to consideration of options for [Earman] following the elimination of her full-time position.

The hearing officer further explained that DVS failed to follow the layoff policy because it did not properly identify all the valid vacancies which could have been offered to Earman as placement options. Specifically, the hearing officer found that DVS failed to follow DHRM

---

[2] According to the DHRM Policies and Procedures Manual, Policy Number 1.30 describes the procedures a state agency must follow in performing layoffs.

Policy 1.30 by failing to determine whether internal placement options were available and by not considering a reduction of Earman's position to part-time in lieu of using a temporary employee. The hearing officer concluded that,

> [S]ince the layoff policy was not followed, either by letter or spirit, as it pertained to at least considering offering [Earman] prescribed alternatives to layoff, and since [DVS] either could not or did not provide any legitimate explanation for the failure, the reasonable inference is that [DVS] retaliated against [Earman].

The hearing officer ordered DVS to reapply the layoff process by identifying all vacant positions that could have been used as placement options, including part-time or wage positions, or by reducing Earman's full-time position to part-time. The hearing officer also ruled that, in the event a valid position was found and Earman accepted such position, she could recover back pay and her attorney's fees, as well as maintaining her seniority and benefits.

On July 1, 2009, pursuant to Code § 2.2-3005.1(A),[3] DVS appealed the award of attorney's fees to the Director of EDR. On September 4, 2009, the Director of EDR held that attorney's fees were allowable in the event Earman was reinstated.

---

[3] Code § 2.2-3005.1(A) states:

> For those issues qualified for a hearing, the hearing officer may order appropriate remedies. Relief may include (i) reinstatement, (ii) back pay, (iii) full reinstatement of fringe benefits and seniority rights, (iv) mitigation or reduction of the agency disciplinary action, or (v) any combination of these remedies. In grievances challenging discharge, if the hearing officer finds that the employee has substantially prevailed on the merits of the grievance, the employee shall be entitled to recover reasonable attorneys' fees, unless special circumstances would make an award unjust. All awards of relief, including attorneys' fees, by a hearing officer must be in accordance with rules established by the Department of Employment Dispute Resolution.

- 4 -

On the same day DVS appealed the award of attorney's fees, DVS also appealed the hearing officer's interpretation of Policy 1.30 to DHRM, pursuant to Code § 2.2-3006(A).[4] On October 1, 2009, DHRM held that the hearing officer's interpretation of Policy 1.30 was incorrect, stating:

> The Department of Human Resource Management respectfully disagrees with the hearing officer that DVS officials misapplied DHRM Policy 1.30 as related to finding placement options for [Earman]. This disagreement is based on the evidence that the Human Resource Manager in her testimony indicated that she had researched available options and that the two positions identified by [Earman] – a temporary position and a wage position – were filled and, therefore, not valid vacancies. The Layoff Policy does not give [Earman] displacement rights to those positions.

DHRM further held that Policy 1.30 "does not obligate an agency to consider reduction to part-time as a pre-layoff consideration."

The matter was remanded to the hearing officer for revision consistent with the DHRM's interpretation of the layoff policy. On October 6, 2009, the hearing officer modified the earlier ruling, stating:

> The relief originally provided to [Earman] was based on the hearing officer's interpretation of DHRM policy. Since DHRM reversed the hearing officer's interpretation of policy, and as required by DHRM's remand decision reversing the hearing officer's interpretation of Policy 1.30, the hearing officer hereby rescinds and vacates the relief granted to [Earman] in the June 18, 2009, original grievance decision . . . .

---

[4] Code § 2.2-3006(A) states:

> Upon the request of a party to a grievance hearing for an administrative review of the hearing decision, the Director of the Department of Human Resource Management shall determine, within 60 days of receipt of such request, whether the hearing decision is consistent with policy.

Pursuant to Code § 2.2-3006(B), Earman appealed the matter to the circuit court. The circuit court affirmed the October 6, 2009 decision of the hearing officer.

Earman timely appeals to this Court.

ANALYSIS

Code § 2.2-3006(B) states, in relevant part:

> Within 30 days of a final decision, a party may appeal *on the grounds that the determination is contradictory to law* by filing a notice of appeal with the clerk of the circuit court in the jurisdiction in which the grievance arose.

(Emphasis added).

We have previously held that the review of state employee grievances required a "tripartite review procedure." Virginia Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002). Under this review procedure, "the hearing officer is to act as fact finder and the Director of the Department of Human Resource Management is to determine whether the hearing officer's decision is consistent with policy." Id. "[N]either of these determinations is subject to judicial review . . . ." Id.[5] Rather, "[t]he only grounds of appeal of the hearing officer's decision [to the circuit court] is 'that the determination is contradictory to law.'" Id.

Furthermore, the burden is on the appealing party to "specify how that decision [was] 'contradictory' to law and what 'law' is thereby being contradicted." Id. at 445-46, 573 S.E.2d at 322. Specifically, the appealing party must "identify [a] constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicted." Tatum v.

---

[5] We express no opinion on whether the Barton standard of review is applicable where there is no basis for the hearing officer's factual findings (i.e., there are no facts to support the hearing officer's factual determination or where the hearing officer's factual determination is plainly wrong).

Virginia Dept. of Agric., 41 Va. App. 110, 122, 582 S.E.2d 452, 458 (2003) (alterations in original) (quoting Barton, 39 Va. App. at 446, 573 S.E.2d at 323).

In her brief, Earman raises seven questions presented. However, six of her questions presented involve either factual determinations made by the hearing officer or policy determinations made by the DHRM, and are therefore not subject to judicial review. In her first question, Earman argues that the facts demonstrate DVS's retaliatory motives in deciding to eliminate her position and lay her off. Such a determination is factual in nature and therefore not subject to judicial review. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) (stating that if "the presumption raised by the [plaintiff's] prima facie case is rebutted . . . the *factual inquiry* proceeds to a new level of specificity" (emphasis added)). Her second question involves the discriminatory nature of the layoff, which is also a factual determination. In her third question, Earman contends that DVS misapplied the layoff policy. As this involves a determination of whether the hearing officer's decision is consistent with policy, it is not subject to judicial review. Earman's fourth question pertains to the sufficiency of the evidence presented, a patently factual determination. The fifth question concerns whether DVS failed to fulfill its obligations to Earman after laying her off, which is also a factual determination. Finally, in her sixth question, Earman attacks DHRM's determination that the hearing officer's interpretation of the layoff policy was incorrect. This necessarily involves a determination of whether the hearing officer's decision is consistent with policy, and is therefore not subject to judicial review.

In her final question, Earman argues that DHRM's failure to issue a decision on DVS's request for administrative review within the 60-day time limit required under Code § 2.2-3006(A) constitutes a procedural default on the part of DVS. The record demonstrates that DHRM issued its decision 91 days after DVS made its request for administrative review. As a result, Earman contends that DHRM's interpretation of the layoff policy is void and, therefore,

so is the directive requiring the hearing officer to revise his decision. She further contends that, because the delayed decision ultimately favored DVS, she was prejudiced by the delay.

Virginia has long recognized that "the use of the word 'shall' in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent." Jamborsky v. Baskins, 247 Va. 506, 511, 442 S.E.2d 636, 638 (1994). Although the language is directory, "failure to adhere to statutory time requirements may result in dismissal if due process concerns are not met." Tran v. Board of Zoning Appeals, 260 Va. 654, 658, 536 S.E.2d 913, 916 (2000). An assessment of whether an individual has "suffered prejudice constituting a denial of due process must be made on a case-by-case basis." Commonwealth v. Wilks, 260 Va. 194, 201, 530 S.E.2d 665, 668 (2000). Further, the prejudice must be "as a result of the delay." Id.

Earman offers no evidence that she was prejudiced as a result of the delay. Rather, she makes the conclusory argument that, because the delayed decision favored DVS, she was prejudiced by the delay. We find no merit to this argument. Code § 2.2-3006(A) contains no "prohibitory or limiting language that prevents" DHRM from ruling after the expiration of 60 days. Jamborsky, 247 Va. at 511, 442 S.E.2d at 638. As such, a delay would not constitute a procedural default on the part of DVS. There is no evidence that Earman would have prevailed but for the delay; therefore it cannot be said that she was prejudiced as a result of the delay.

CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

Affirmed.