COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


VIRGINIA DEPARTMENT OF TRANSPORTATION
                                                                    OPINION BY
v.        Record No. 1591-08-1                          JUDGE D. ARTHUR KELSEY
                                                                   MARCH 31, 2009
JERRY STEVENS


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

Guy W. Horsley, Jr., Special Assistant Attorney General (Robert F.
McDonnell, Attorney General; Maureen Riley Matsen, Deputy
Attorney General; Gregory C. Fleming, Senior Assistant Attorney
General, on briefs), for appellant.

Elaine K. Inman (Ann K. Sullivan; Crenshaw, Ware & Martin,
P.L.C., on brief), for appellee.


The Virginia Department of Transportation (VDOT) fired Jerry Stevens for cursing a

crew leader and threatening a co-worker. After exhausting the administrative grievance process,

Stevens appealed the termination decision to the circuit court. The court vacated the termination

as "contradictory to law" and awarded Stevens his attorney fees. Agreeing with VDOT that the

circuit court erred in doing so, we reverse.

I.

Ordinarily an appellate court recites the facts in the light most favorable to the prevailing

party in the circuit court. In cases involving administrative review of state employee grievances,

however, the light-most-favorable rendition of the facts is inapt. The facts of this case came

before the circuit court, as they do to us, "on the record" developed in the agency proceedings.

See Code § 2.2-3004(E) (precluding the admission of new evidence in the judicial proceeding

except when "necessary to resolve any controversy as to the correctness of the record" or as the

"ends of justice" may require). In reviewing agency factfinding, a circuit court acts much like an appellate court — reviewing the facts developed in the agency record in the light most favorable to the party prevailing in that forum and deferring to agency factfinding unless patently insubstantial. See Va. Dep't of Corr. v. Compton, 47 Va. App. 202, 217-18, 623 S.E.2d 397, 404 (2005).[1]

In this case, the agency record reveals that the termination process began with an investigation into two incidents involving Stevens, an employee of VDOT. In the first incident, witnesses reported that Stevens shouted "Kiss my fucking ass" to a crew leader in response to the suggestion that he "hurry up" with his assigned task. In the second incident, a co-worker reported that Stevens came to her home after work and demanded in a threatening manner to know if she was one of the witnesses who reported the cursing incident.

VDOT issued a "Due Process Letter" to Stevens stating that his cursing episode violated state policy forbidding the use of obscene language. VDOT also stated the encounter with the co-worker violated a policy forbidding threats and coercion of other state employees. VDOT advised Stevens he would be terminated as a result of these two infractions. Stevens demanded review by a hearing officer appointed by the Department of Employee Dispute Resolution (DEDR). Upon receiving evidence from VDOT and Stevens, the hearing officer made these factual findings:

- After being reminded to "hurry up" with the task at hand, Stevens told his crew leader, "Kiss my fucking ass." The crew leader asked, "What did you say?" "Kiss my fucking ass," Stevens replied, in an angry and confrontational manner. This exchange, the hearing officer found, violated state employee policy forbidding the use of "obscene or abusive language."

---

[1] One exception, however, exists to this general rule. In appeals filed by certain state employees "pursuant to Code § 2.2-3007 — rather than § 2.2-3006 — the circuit court operates as a trial court because it conducts a *de novo* hearing on the merits." Compton, 47 Va. App. at 216 n.5, 623 S.E.2d at 404 n.5.

- Later that same day, Stevens drove home and passed a co-worker "at a high rate of speed." Stevens "pulled in front of her and slowed down." The co-worker made a turn and drove home another way. As she got out of her vehicle, Stevens showed up "mad and loud." He demanded, "what [are] you doing telling on me?" and warned, "what goes around comes around." Frightened, the co-worker locked herself in her home and immediately called her VDOT supervisor. The hearing officer found this incident violated state policy against "threatening or coercing" co-workers.

Hearing Officer Decision, No. 8752 (Dec. 14, 2007).

Stevens objected to both rulings. He claimed he did not say "Kiss my fucking ass" to his crew leader in an angry and threatening tone. He only said, "Kiss my ass." And he said it in a non-threatening manner "commonly used among crewmembers" even when referring to their bosses. As for the incident with the co-worker, Stevens said she misunderstood his intentions. He was merely visiting her at her home "in order to apologize to her for having to overhear his comments to the crew leader." The hearing officer found Stevens not credible and confirmed VDOT's decision to terminate him.[2]

Stevens appealed the hearing officer's decision to the Department of Human Resources Management (DHRM) to contest the hearing officer's interpretation of the policy. DHRM reviewed the case and issued a written "Policy Ruling" opinion, which concluded:

> It is indisputable that the grievant used obscene and abusive language in the workplace. In addition, even though his display of threatening behavior was not in the workplace, his behavior was an extension of a job-related incident. Thus, it is the opinion of this Agency that VDOT officials properly applied the provisions of the Standards of Conduct Policy and the hearing officer properly interpreted that policy.

DHRM Policy Ruling, No. 8752, at 3 (Feb. 19, 2008).

---

[2] Stevens requested a reconsideration of the hearing officer's decision claiming "mitigating circumstances" required a lesser sanction. Upon reconsideration, the hearing officer held "there are no mitigating circumstances in this case so as to render the Agency's discipline beyond the limits of reasonableness." Reconsideration Decision, No. 8752-R (Jan. 22, 2008), on remand from DEDR Review Decision, No. 2008-1903 (Jan. 15, 2008).

- 3 -

Stevens then appealed the hearing officer's decision to the circuit court. He made two arguments: First, the DHRM policy did not permit termination for either incident. Second, if the policy could be construed to do so, it violated due process principles. The circuit court accepted both arguments, reinstated Stevens to his former position, and awarded $10,789.19 in attorney fees to Stevens.

## II.

Under the State Grievance Procedure, Code § 2.2-3000 *et seq.*, an administrative hearing officer serves primarily as a factfinder. Tatum v. Va. Dep't of Agric. & Consumer Servs., 41 Va. App. 110, 121, 582 S.E.2d 452, 458 (2003) (citation omitted). The statute gives DHRM the responsibility to decide "whether the hearing officer's decision is consistent with policy." Id. (citation omitted). By doing so, the "General Assembly has clearly vested review of policy issues involved in employee grievances in the [DHRM], and not in the courts." Va. Dep't of State Police v. Barton, 39 Va. App. 439, 446, 573 S.E.2d 319, 323 (2002) (noting that an "[i]nterpretation of state agency policy is itself a matter of policy" outside the scope of judicial review). The statute also vests the DEDR with final authority over "all matters related to procedural compliance" with the grievance procedure. Code § 2.2-1001(5). This too is beyond judicial review. Tatum, 41 Va. App. at 124, 582 S.E.2d at 459.[3]

A grievant may seek judicial review only if an agency decision is "contradictory to law." Code § 2.2-3006(B). In this context, the "law" represents "the aggregate of legislation, judicial precedents and accepted legal principles." Tatum, 41 Va. App. at 124, 582 S.E.2d at 459 (internal quotation marks, brackets, and citations omitted). The party challenging the hearing officer's decision must "specify how that decision is 'contradictory' to the law and what 'law' is

_____

[3] See generally Barton, 39 Va. App. at 447, 573 S.E.2d at 323 (noting "the provision of a state grievance procedure for state employees is a matter of legislative grace" and, as such, the "General Assembly has wide latitude in how it chooses to structure that process, including any right of appeal").

thereby being contradicted." Id. "Thus, because the General Assembly granted to the circuit courts only the authority to consider whether the final determination of the hearing officer is 'contrary to law,' we are likewise limited to such review in considering whether the trial court erred in its determination." Pound v. Dep't of Game & Inland Fisheries, 40 Va. App. 59, 64, 577 S.E.2d 533, 535 (2003).

In this case, the circuit court held the hearing officer's decision was "contradictory to law" because (a) DHRM policy did not authorize VDOT's firing of Stevens and, (b) even if it did, applying the policy to Stevens violated his due process rights. We disagree with both holdings.

A. TERMINATION CONSISTENT WITH DHRM POLICY

DHRM policy provides an illustrative list of "unacceptable" conduct by state employees that could lead to disciplinary action. The policy begins with this caveat:

> The offenses set forth below are not all-inclusive, but are intended as examples of unacceptable behavior for which specific disciplinary actions may be warranted. Accordingly, any offense that, in the judgment of agency heads, undermines the effectiveness of agencies' activities, may be considered unacceptable and treated in a manner consistent with the provisions of this section.

Standards of Conduct, DHRM Policy 1.60 (Sept. 16, 1993).[4]

The DHRM policy divides unacceptable conduct into three groups based on severity. Use of "obscene or abusive language" falls within Group I, typically resulting in a reprimand or counseling. Id. The most severe category, Group III, includes "acts and behavior of such a serious nature that a first occurrence normally should warrant removal." Id. One example of a Group III offense is "[t]hreatening or coercing persons associated with any state agency

---

[4] DHRM later amended Policy 1.60 on April 16, 2008. These amendments, however, have no effect on this case.

- 5 -

(including, but not limited to, employees, supervisors, patients, inmates, visitors, and students)." Id.

The circuit court recognized that the "obscene or abusive language" offense, a Group I violation, did not warrant termination. This observation, however, leads to no end. VDOT did not fire Stevens only because he cursed his crew leader. He was fired because he cursed his crew leader *and* threatened a co-worker whom Stevens thought had turned him in. If the latter incident warrants termination, it does not matter whether the former standing alone would as well.

As for the "[t]hreatening or coercing" violation, the circuit court held this provision of the DHRM policy did not apply to threats or coercion against co-workers that occur outside the workplace. The court's reasoning, however, is flawed at several levels. To begin with, nothing in the DHRM policy implies the workplace limitation imposed by the circuit court. To the contrary, the policy makes clear the listed examples do not define the outer boundaries of unacceptable conduct. The text of the "[t]hreatening or coercing" provision, moreover, applies to a broad category of potential victims (all those "associated with any state agency"), not just those threatened or coerced *while* working at a state agency worksite.

More important, whatever the merits of the circuit court's interpretation of DHRM policy, the court had no authority to enforce it. The legislature "has clearly vested review of policy issues involved in employee grievances in the [DHRM], and not in the courts." Barton, 39 Va. App. at 446, 573 S.E.2d at 323. To be sure, "[i]nterpretation of state agency policy is itself a matter of policy" outside the scope of judicial review. Id. "By limiting an appeal to issues 'contradictory to law,' the General Assembly underscores a guiding principle of the grievance procedure as set out in Code § 2.2-3004: 'Management reserves the exclusive right to

manage the affairs and operations of state government.'"  Barton, 39 Va. App. at 447, 573 S.E.2d

at 323.

Here, DHRM interpreted its "[t]hreatening or coercing" provision to apply to Stevens's

angry encounter with his co-worker at her home.  As DHRM explained, "even though his display

of threatening behavior was not in the workplace, his behavior was an extension of a job-related

incident."  DHRM Policy Ruling, No. 8752 (Feb. 19, 2008).  The circuit court had no authority

to overrule DHRM's interpretation as "contradictory to law" under Code § 2.2-3006(B).  The

hearing officer's decision, approved by DHRM, thus remains the final word on whether VDOT's

termination of Stevens complied with DHRM policy.

## B.  CONSTITUTIONAL DUE PROCESS PRINCIPLES

We likewise find no merit in the circuit court's alternative holding that VDOT violated

due process principles when it fired Stevens.  The due process doctrine gives a state employee

with a property interest in his employment the right to "oral or written notice of the charges

against him, an explanation of the employer's evidence, and an opportunity to present his side of

the story."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Garraghty

v. Jordan, 830 F.2d 1295, 1299 (4th Cir. 1987).  Stevens concedes he received due process in this

traditional sense.  It would be hard to argue otherwise.  The elaborate statutory grievance

procedures more than satisfy the minimal requirements of due process.[5]

Stevens nevertheless argues his termination violated due process principles because he

"had no notice that allegedly threatening or coercive conduct outside the workplace was subject

---

[5] See generally Moore v. Williamsburg Regional Hospital, ___ F.3d ___, ___ (4th Cir. 2009) ("Plaintiff also alleges that WRH did not provide him adequate procedures when it deprived him of his property right in his medical practice.  Plaintiff's claim fails because the procedures WRH afforded him exceed the constitutional threshold established by Mathews v. Eldridge, 424 U.S. 319 (1976).  Plaintiff was notified of the allegations against him, given ample opportunity to present evidence, allowed to call and cross-examine witnesses, and was represented by counsel throughout.  There was no procedural due process violation.").

to disciplinary action." Appellee Br. at 11. Because he had "no notice of the possibility of termination," Stevens continues, he was denied due process. Id. at 12. Acknowledging "this might be a little bit of a matter of first impression," the circuit court accepted Stevens's argument.

This is a wholly new take on the meaning of due process. It goes beyond a state employee's procedural right to be heard before being fired and, instead, recognizes a new substantive right not to be fired at all if the employer does not warn the employee of each specific example of misbehavior for which the employee could be fired. This thesis, accepted by the circuit court, confuses the notice required by constitutional due process (pre-deprivation notice of an *impending* termination decision) with the notice typically provided, but not constitutionally required, by state employment policies (notice of possible grounds for a *potential* termination).

Seeking to provide the latter type of notice, the DHRM policy included a representative list of offenses that "normally should warrant removal" and warned that the list was illustrative, "not all-inclusive." Stevens can hardly claim that he had a constitutional right to engage in unlisted misbehavior and still keep his job. "The duty of fair notice does not require such extraordinary and particularized foresight of the specific manner in which a [state employee] might display poor judgment meriting severe discipline." Swank v. Smart, 898 F.2d 1247, 1253 (7th Cir. 1990). "Vague, catch-all standards for discipline do not violate due process." Id. (citing Brasslett v. Cota, 761 F.2d 827, 838 (1st Cir. 1985)).

The same can be said of the circuit court's holding that VDOT violated the DHRM policy by applying (even with DHRM's blessing) the "[t]hreatening or coercing" provision to conduct off the worksite. Although the point "is clothed in the language of constitutional deprivation, it does not raise an issue of procedural due process." Detweiler v. Va. Dep't of Rehab. Serv., 705

F.2d 557, 561 (4th Cir. 1983). "The due process clause does not require state courts to be the final arbiters of the merits of a disciplinary discharge." Id. "When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." Goodrich v. Newport News Sch. Bd., 743 F.2d 225, 227 (4th Cir. 1984).

## III.

In sum, the circuit court exceeded its authority by overruling the hearing officer's decision approving VDOT's termination of Stevens. We reverse the circuit court's reinstatement order and its award of attorney fees to Stevens.

Reversed.