PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia

VIRGINIA DEPARTMENT OF ALCOHOLIC
 BEVERAGE CONTROL
                                                        OPINION BY
v.     Record No. 1352-13-2                    JUDGE D. ARTHUR KELSEY
                                                        MAY 27, 2014
DON C. TYSON

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Ronald R. Regnery, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General; Wesley G.
Russell, Jr., Deputy Attorney General; Guy W. Horsley, Jr.,
Special Assistant Attorney General, on briefs), for appellant.

Darry A. Parker for appellee.

        The Virginia Department of Alcoholic Beverage Control (the "agency") fired Don C.

Tyson in 2012. Tyson exhausted his grievance remedies afforded by the State Grievance

Procedure, Code § 2.2-3000 *et seq.* On appeal, the circuit court reversed the administrative

hearing officer's decision, which upheld the agency's decision to terminate Tyson, on the ground

that the agency violated Tyson's procedural due process rights. Finding no legal basis for that

conclusion, we reverse the circuit court's holding and reinstate the hearing officer's decision.

I.

        Ordinarily, an appellate court recites the facts in the light most favorable to the prevailing

party in the circuit court. "In cases involving administrative review of state employee

grievances, however, the light-most-favorable rendition of the facts is inapt." Va. Dep't of

Transp. v. Stevens, 53 Va. App. 654, 658, 674 S.E.2d 563, 565 (2009). The facts of this case

came before the circuit court, as they do to us, "on the record" developed in the agency

proceedings. See Code § 2.2-3006(B). "In reviewing agency factfinding, a circuit court acts

much like an appellate court — reviewing the facts developed in the agency record in the light most favorable to the party prevailing in that forum and deferring to agency factfinding unless patently insubstantial." Stevens, 53 Va. App. at 658, 674 S.E.2d at 565 (citing Va. Dep't of Corr. v. Compton, 47 Va. App. 202, 217-18, 623 S.E.2d 397, 404 (2005)).  On further appeal to us, we apply the same standard.

In 2012, Tyson worked as a project manager for the agency.  He was fired after receiving multiple disciplinary notices for various things, such as "abuse of state time," the "failure to follow supervisory instructions," and "poor job performance."  App. at 4, 6, 73.  The specific process that led to his dismissal began with a meeting with his supervisor who counseled Tyson about a poorly written and inaccurate letter that he sent to an agency consultant.  The supervisor instructed Tyson to take certain remedial measures, but he failed to comply fully with her instructions.

Subsequently, on April 4, 2012, the agency issued to Tyson a "Memorandum of Pending Disciplinary Action."  Id. at 2.  The memo advised Tyson that his supervisor had recommended disciplinary action against him and explained in detail her basis for doing so.  The memo ended with the statement:  "In an effort to provide you with due process, you are given 48 hours to respond in writing to the charge listed above.  This is your opportunity to provide any comments you wish to add concerning these incidents before the disciplinary action is issued."  Id. at 3.  Tyson signed the memo, acknowledging that he personally received it on April 4, 2012.

Two days came and went without any oral or written response to the memo by Tyson.  Approximately two weeks later, on April 20, 2012, the agency issued two written disciplinary notices to Tyson.  The second of the two notices terminated Tyson's employment effective April 23, 2012.  The notices informed Tyson of his rights under the agency's grievance procedure.  Tyson responded to the notices with a "Grievance Form A – Expedited Process" and a detailed

written statement attached explaining his position and giving his version of the facts. Id. at 8, 14-15. The agency reviewed the grievance and denied it. Id. at 9.

Represented by counsel, Tyson then requested and received a formal hearing before an administrative hearing officer. The hearing officer received multiple exhibits and heard from six witnesses. Tyson testified on his own behalf and offered his rebuttal to the agency's complaints about his work performance.

At the evidentiary hearing, Tyson produced a physician's note dated April 6, 2012, entitled "Certificate to Return to School or Work." Id. at 70. The note stated Tyson "has been under my care from 4-6-12 to 4-16-12" and will be "out of work 4-9 to 4-16." Id. No explanation of any kind accompanied these statements. Tyson also provided another note, dated April 12, 2012, stating that Tyson was "totally incapacitated" from April 16 to May 21, 2012, but was able to return to full "regular" duty with no restrictions on May 21 (the last day of his total incapacity). Id. at 71. In emails to his supervisor on April 5 and 6, Tyson said he would be "out sick" due to "pain from [his] head into [his] back," allegedly from "muscle spasms." Id. at 72. These conditions, counsel argued, precluded Tyson from offering his side of the story after receiving the April 4 memo outlining his supervisor's concerns about his work. No physician, however, testified in support of this assertion at Tyson's evidentiary hearing.

The administrative hearing officer affirmed the agency's decision to terminate Tyson for cause. Tyson appealed to the circuit court pursuant to the State Grievance Procedure, Code § 2.2-3006(B). The circuit court reversed the hearing officer's decision, awarded back pay to Tyson, and ordered the agency to pay Tyson's attorney fees. The court grounded its decision on the finding that Tyson "was not afforded a constitutionally acceptable opportunity to respond to the pre-termination notice of disciplinary action which was issued to him on April 4, 2012." App. at 102.

II.

On appeal, the agency argues that the circuit court erred as a matter of law in reversing the hearing officer's decision. We agree.

In this case, as in most, the procedural context fixes the boundaries of a circuit court's adjudicatory power. A state employee may seek judicial review of an agency's personnel decision only if it is "contradictory to law." Stevens, 53 Va. App. at 661, 674 S.E.2d at 567 (quoting Code § 2.2-3006(B)); Compton, 47 Va. App. at 218-19, 623 S.E.2d at 405. "In this context, the 'law' represents 'the aggregate of legislation, judicial precedents and accepted legal principles.'" Stevens, 53 Va. App. at 661, 674 S.E.2d at 567 (quoting Tatum v. Va. Dep't of Agric. & Consumer Servs., 41 Va. App. 110, 124, 582 S.E.2d 452, 459 (2003)). "The party challenging the hearing officer's decision must specify how that decision is contradictory to the law and what law is thereby being contradicted." Id. (internal quotation marks omitted). We are "likewise limited to such review in considering whether the trial court erred in its determination." Id. (internal quotation marks omitted).

The circuit court held that the agency violated Tyson's procedural due process rights. The court did not hold that the State Grievance Procedure, Code § 2.2-3000 *et seq.* — which the agency scrupulously followed — was in any way unconstitutional. Nor did the court hold that the agency violated any provision of the grievance statute or its supporting regulations. Rather, the court held only that Tyson "was not afforded a constitutionally acceptable opportunity to respond to the pre-termination notice of disciplinary action which was issued to him on April 4, 2012." App. at 102.

The circuit court's decision is not at all self-explanatory. Under settled principles, a state employee with a property interest in his employment is entitled to pre-termination "oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for

the employee to tell his side of the story." Gilbert v. Homar, 520 U.S. 924, 929 (1997) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)); see also Garraghty v. Jordan, 830 F.2d 1295, 1299-1300 (4th Cir. 1987). The "elaborate statutory grievance procedures" required by the State Grievance Procedure "more than satisfy the minimal requirements of due process." Stevens, 53 Va. App. at 664, 674 S.E.2d at 568.

Here, the agency followed the employee grievance statutes at all stages of the process. It ultimately ended with an evidentiary hearing in which Tyson was represented by counsel and allowed to present evidence, to call and examine witnesses, and to contest all aspects of the agency's decision. It is hard to imagine how this process violated Tyson's due process rights. See generally Moore v. Williamsburg Reg'l Hosp., 560 F.3d 166, 180 (4th Cir. 2009) ("Plaintiff was notified of the allegations against him, given ample opportunity to present evidence, allowed to call and cross-examine witnesses, and was represented by counsel throughout. There was no procedural due process violation.").[1]

Though the circuit court never said as much, Tyson claims the circuit court concluded that he suffered from a medical condition that precluded him from participating in the due process being offered to him prior to the April 4 "Memorandum of Pending Disciplinary Action." We have several responses to this hypothesis.

---

[1] See also Dennison v. Cnty. of Frederick, 921 F.2d 50, 55 (4th Cir. 1990) (holding that appellant "received all of the procedural due process to which he was entitled" because he received an extensive post-termination hearing in which he "was represented by counsel and could call witnesses as well as cross-examine adverse witnesses"); McClelland v. Massinga, 786 F.2d 1205, 1213 (4th Cir. 1986) (recognizing that the requirements of procedural due process are met when appellant is "entitled to a [post-deprivation] full administrative hearing, with the panoply of rights attaching to such a hearing"); Stevens, 53 Va. App. at 664, 674 S.E.2d at 568 (holding that the minimal requirements of procedural due process are amply met by the "elaborate statutory grievance procedures").

To begin with, the circuit court had no authority to review *de novo* the facts recited in the agency record or to substitute its own judgment for that of the hearing officer. The court's only role was to determine whether the agency violated the law. No "law" — constitutional, statutory, or regulatory — requires an agency to suspend employment decisions because the affected employee had (as Tyson claimed) "pain from [his] head into [his] back" associated with "muscle spasms." App. at 72. Nothing about these alleged symptoms precluded Tyson from contacting the agency to explain why he thought the agency should not fire him.

Thus, the circuit court's holding (whether characterized as a question of fact or as a mixed question of fact and law) is plainly wrong. Tyson *was* "afforded a constitutionally acceptable opportunity to respond to the pre-termination notice of disciplinary action which was issued to him on April 4, 2012." Id. at 102. He met with his supervisor prior to receiving the April 4 memo and was given a full and fair opportunity to respond to the supervisor's complaints about his job performance. In Tyson's own recitation of the facts, which was attached to his grievance form, he admitted to giving his supervisor oral explanations for his job performance prior to April 4 when each of the issues arose. See id. at 14, 15. He personally received the memo on April 4 and was given two days to repeat his side of the story. He made no response.[2]

In an abundance of caution, the agency waited not two days — but sixteen days — before taking any further action. At no time during that extended period did Tyson accept the agency's invitation to offer whatever response he had to his supervisor's criticism of his work. Nor did he ever contact the agency seeking additional time to respond.

Tyson's reliance on the two cryptic medical forms (which presumably persuaded the circuit court) adds nothing of substance to the debate. One of the notes, dated April 6, 2012,

---

[2] See Hanton v. Gilbert, 36 F.3d 4, 7 (4th Cir. 1994) (rejecting a claim of denial of due process prior to termination when the employee was given "an opportunity to present her view of the matter" and chose "to remain silent in the face of such an opportunity").

stated he would be out of work beginning April 9, 2012 — five days after the April 4 memo and thus well after the two-day response period.  Id. at 70.  The other note, without any supporting medical diagnosis or explanation, claimed Tyson was "totally incapacitated" from April 16 to May 21, 2012, but was able to return to full "regular" duty with no restrictions on May 21.  Id. at 71.  Even if the hearing officer had accepted this note at face value, Tyson's alleged incapacity between April 16 and May 21 says nothing about his earlier ability to respond within two days of the April 4 memo.[3]

Finally, the circuit court's holding failed to identify the structural flaw in Tyson's argument:  Tyson did not challenge his termination, but only the process that led to it.  "Process is not an end in itself."  Olim v. Wakinekona, 461 U.S. 238, 250 (1983).  The point of due process is to ensure that the government does not deprive anyone of "life, liberty, or property" arbitrarily and capriciously — that is, "without due process of law."  U.S. Const. amend. XIV, § 1.  Pre-deprivation process provides "an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are *true* and support the proposed action."  Loudermill, 470 U.S. at 545-46 (emphasis added).[4]  The right of an aggrieved person to challenge the process leading to his deprivation, therefore, presupposes he also challenges the deprivation itself.  See 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 17.9(c)(i), at 269

---

[3] In fact, Tyson was able to send two emails to his supervisor informing her that he would be "out sick" on April 5 and 6, which was within that two-day response period.  App. at 72.

[4] See also Homar, 520 U.S. at 933 (acknowledging that "the purpose of a pre-termination hearing is to determine 'whether there are reasonable grounds'" for the termination (quoting Loudermill, 470 U.S. at 545-46)); Powell v. Mikulecky, 891 F.2d 1454, 1458 (10th Cir. 1989) ("The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted."); Crocker v. Fluvanna Cnty. Bd. of Pub. Welfare, 859 F.2d 14, 17 (4th Cir. 1988) ("[A] principal purpose of a pre-termination hearing is so that the employer may avoid a mistake.").

(5th ed. 2012) ("A pre-termination opportunity to respond to charges would help to avoid erroneous or unjustified termination decisions.").

On appeal, Tyson concedes the adequacy of his post-deprivation remedies and accepts that they support the agency's decision to fire him. See Oral Argument Audio at 24:20 to 24:43; see also Appellee's Br. at 2 (acknowledging that Tyson did not ask for his employment to be reinstated). It necessarily follows that the adequacy of the hearing officer's evidentiary hearing and his decision on the merits of the termination decision cures any alleged deficiency in Tyson's pre-deprivation process, particularly Tyson's claim that he did not have an opportunity to respond to a memo he received many weeks prior to the hearing.[5] We fail to see what difference his initial informal explanation could have made if his formal explanation, delivered in the context of a full evidentiary hearing, was concededly insufficient to save his job.

In rebuttal, Tyson suggests his post-deprivation remedy, while adequate, should be disregarded as legally irrelevant. See Oral Argument Audio at 22:54 to 23:21. Settled precedent, however, has rejected the assertion that "once we find a due process violation in the denial of a pretermination hearing we need not and should not consider whether the post-termination procedures were adequate" because, among other reasons, "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." Loudermill, 470 U.S. at 547 n.12. "Pre-termination and post-termination proceedings are not

---

[5] Adequate and thorough post-deprivation remedies can cure inadequate or superficial pre-deprivation procedures. See, e.g., Smutka v. City of Hutchinson, 451 F.3d 522, 527 (8th Cir. 2006) (citing Krentz v. Robertson Fire Prot. Dist., 228 F.3d 897, 903 (8th Cir. 2000)); McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994); Glenn v. Newman, 614 F.2d 467, 473 (5th Cir. 1980); see also Scott v. Cnty. of Richardson, 789 N.W.2d 44, 51-52 (Neb. 2010) (collecting federal and state court cases discussing this point). Several courts have added the caveat that robust post-deprivation remedies cannot cure the complete absence of *any* pre-deprivation process. See, e.g., Cotnoir v. Univ. of Me. Sys., 35 F.3d 6, 12-13 (1st Cir. 1994); Schultz v. Baumgart, 738 F.2d 231, 237 (7th Cir. 1984). We need not address this caveat, however, given that Tyson was afforded pre-deprivation process.

evaluated for constitutional adequacy in isolation from each other; a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient." <u>Senra v. Town of Smithfield</u>, 715 F.3d 34, 39 (1st Cir. 2013) (citing <u>Loudermill</u>, 470 U.S. at 547 n.12). "Therefore, a pretermination opportunity to respond, coupled with post-termination administrative procedures provides 'all the process that is due.'" <u>Holland v. Rimmer</u>, 25 F.3d 1251, 1258 (4th Cir. 1994) (quoting <u>Loudermill</u>, 470 U.S. at 547-48).

### III.

In sum, the circuit court erred in reversing the hearing officer's decision, which upheld the agency's termination of Tyson's employment, on the ground that Tyson's procedural due process rights were violated. We reverse the circuit court's order and reinstate the hearing officer's decision.

<u>Reversed.</u>