COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia

WESLEY SHIFFLETT

OPINION BY
v.        Record No. 1357-23-4                    JUDGE LISA M. LORISH
OCTOBER 15, 2024

BRIAN J. HILL, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

J. Caleb Jones (Simms Showers, LLP, on briefs), for appellant.

Kimberly P. Baucom, Deputy County Attorney (Elizabeth D. Teare,
County Attorney; Office of the County Attorney, on briefs), for
appellees.


The Fairfax County Police Department (FCPD) fired Officer Wesley Shifflett after he

shot and killed a man suspected of shoplifting.  Shifflett challenged his termination by filing a

grievance notice with FCPD.  Fairfax County has adopted an employee grievance procedure, as

required by Code § 15.2-1506, to resolve disputes between employees and the county as a public

employer.  Under Code § 15.2-1507, any party to a grievance proceeding can seek review of the

other party's alleged noncompliance with the grievance procedure.  This appeal is about the

scope of that compliance review.  Both the County Executive, tasked with compliance review,

and the circuit court, found that such review is limited to whether FCPD followed the grievance

procedure and did not extend to consideration of Shifflett's other constitutional, statutory, and

personnel policy arguments.  We agree.  We also conclude that the circuit court's order

reviewing the compliance determination is a final order subject to our review under Code

§ 17.1-405(A)(3) despite the ongoing grievance process.

BACKGROUND[1]

Shifflett, then an FCPD officer, chased a suspect accused of shoplifting. During the pursuit, Shifflett shot and killed the suspect. Shifflett alleges that just prior to the shooting, the suspect "quickly stopped his flight, turned towards Shifflett, dropped into a defensive stance, and reached for his waistband." About a month later, the Fairfax Chief of Police informed Shifflett via memo that he was being terminated. The reason cited was that Shifflett's "performance" during the shooting and his "personal conduct, specifically [his] inconsistent articulation and lack of forthcoming answers to questions, in totality have failed to meet the expected standards required for continued employment with the Fairfax County Police Department." A week later, the Chief of Police reaffirmed the termination in a second memo, citing these same reasons with more specificity. Shifflett was officially terminated on April 14, 2023. Shifflett subsequently filed a grievance notice with FCPD under the Fairfax County grievance procedure established in Chapter 17 of the Fairfax County Personnel Regulations,[2] asserting that FCPD did not provide him with sufficient notice or justification for his termination.

Localities, like Fairfax County, must have grievance procedures that comply with Code §§ 15.2-1506 and 15.2-1507 or they will be deemed to have adopted the separate procedure for state employee grievances set out in Code § 2.2-3000 et seq.[3] An employee grievance is a

---

[1] We recite the facts as pleaded in Shifflett's petition for judicial review of the compliance decision. Because this case turns on statutory interpretation, the brief factual background is presented only for context.

[2] The grievance procedure is viewable online at https://perma.cc/9524-PAZX.

[3] "[E]ach locality in Virginia with 'more than fifteen employees shall have a grievance procedure for its employees.'" *City of Hampton v. Williamson*, 302 Va. 325, 332 (2023) (quoting Code § 15.2-1506). "The various components and features that must be included in the grievance procedures are primarily outlined in Code § 15.2-1507." *Id.* The statute outlines an "elaborate statutory grievance procedure[]" that "more than satisf[ies] the minimal requirements of due process." *Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 664 (2009).

"complaint or dispute by an employee relating to his employment," and the statute provides specific examples of matters that are "grievable," as well as types of complaints that are "nongrievable." Code § 15.2-1507(A)(1), (A)(2). Fairfax County adopted its own grievance procedure, and Shifflett has not argued that the procedure fails to comply with the relevant statutes.

The Fairfax County grievance procedure has four steps. Step One requires an "employee who has a complaint" to "discuss the problem directly with his/her supervisor within twenty (20) business days of the date the employee should have reasonably gained knowledge of the event giving rise to the complaint." Fairfax Cnty. Pers. Reg. § 17.5-1. The supervisor must give a "verbal reply" either "during the discussion or within five business days following the meeting."[4] *Id.* Steps Two and Three of the Fairfax County grievance procedure involve additional meetings with the employee's division supervisor and department head after the employee's complaint is made in writing.[5] *Id.* at §§ 17.5-2, -3. If "a complaint cannot be satisfactorily resolved pursuant" to these steps, then Step Four requires the employee to "request on the appropriate form a determination concerning the grievability of the complaint within ten business days of receipt of the third step reply."[6] *Id.* at § 17.5-4.

---

[4] *Cf.* Code § 15.2-1507(A)(8)(a) ("The first step shall provide for an informal, initial processing of employee complaints by the immediate supervisor through a nonwritten, discussion format.").

[5] *Cf.* Code § 15.2-1507(A)(8)(b) ("Management steps shall provide for a review with higher levels of local government authority following the employee's reduction to writing of the grievance . . . .").

[6] *Cf.* Code § 15.2-1507(A)(9)(a) ("Decisions regarding grievability and access to the procedure shall be made by the chief administrative officer of the local government, or his designee, at any time prior to the panel hearing, at the request of the local government or grievant, within 10 calendar days of the request.").

Under Code § 15.2-1507, either party may raise the other party's alleged failure to "comply with all substantial procedural requirements of the grievance procedure . . . without just cause." Code § 15.2-1507(A)(7)(a). If a noncompliant party fails to correct the "compliance violation" "within five workdays of receipt of written notification by the other party," it "shall result in a decision in favor of the other party on any grievable issue." *Id.* The statute tasks "[t]he chief administrative officer, or his designee" with "determin[ing] compliance issues." Code § 15.2-1507(A)(7)(b). The chief administrative officer's decision is "subject to judicial review" by "petition with the circuit court within 30 days of the compliance determination." *Id.* In Fairfax County, the County Executive is the chief administrative officer.

On April 20, 2023, Shifflett participated in a meeting that was part of Step One of the grievance process. Following this meeting, Shifflett filed a notice with the Fairfax County Executive arguing that FCPD had not complied with the grievance process because he was not provided with "important documents" before the Step One meeting and because his immediate supervisor was not present. He also argued that his dismissal was improper because FCPD violated his constitutional and statutory rights and had not followed relevant personnel policies. Specifically, Shifflett alleged that (1) his due process rights were violated because he was not provided with a meaningful pre-termination hearing, as required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985); (2) the County failed to uphold his rights under the Law-Enforcement Officers Procedural Guarantee Act (LEOPGA); and (3) the County failed to follow its policies under Chapter 16, which govern employee discipline, by proceeding only under the unsatisfactory service separation procedure under Chapter 9.[7]

---

[7] Chapter 9 sets out the requirements for "separations of employees from positions in the competitive service," and allows for an "unsatisfactory service separation whenever the work habits, attitudes, production or personal conduct of an employee falls below the desirable standards for continued employment in the current position." Fairfax Cnty. Pers. Reg. § 9-5.

The County Executive found that FCPD acted properly during Step One of the grievance procedure and that it had no authority to consider Shifflett's constitutional, statutory, or personnel policy arguments. Instead, in a written opinion, the County Executive concluded that its authority was limited to determining whether the parties were in compliance with the grievance procedure itself. Shifflett appealed to the circuit court, and Judge Shannon agreed with the County Executive that compliance review was limited to the four corners of the grievance process itself. Shifflett now appeals to this Court, arguing that the circuit court erred in concluding that it had neither jurisdiction nor authority to consider his constitutional, statutory, and personnel policy arguments.

While the appeal to this Court was pending, Shifflett's grievance proceeding continued.[8] As part of that process, Shifflett requested that the County Executive determine whether his complaints were "grievable," consistent with Step Four of the grievance procedure.[9] The County Executive found that Shifflett's complaint about his unsatisfactory service separation was grievable but that his charge that FCPD violated its personnel policy on employee discipline under Chapter 16 was not a grievable issue. Shifflett appealed this determination to the circuit court, as permitted by Code § 15.2-1507(A)(7)(b). The matter went before Judge Tran, who held that the County Executive erred in finding that Shifflett's complaint about the improper

_____

[https://perma.cc/UKG3-8ENA]. In contrast, Chapter 16 sets out options for "the progressive discipline" of employees through a series of warnings, reprimands, and suspensions from employment, while also providing for dismissal and disciplinary demotion. Fairfax Cnty. Pers. Reg. § 16. [https://perma.cc/P48S-UDTM]. Shifflett argues that FCPD should have proceeded under the progressive discipline options set out in Chapter 16 instead of immediately terminating him for unsatisfactory service under Chapter 9.

[8] This Court denied Shifflett's motion to stay the proceedings.

[9] The Fairfax County grievance procedure contains a list of grievable complaints, as well as a list of nongrievable complaints. *Cf.* Code § 15.2-1507(A)(1) (listing grievable complaints); Code § 15.2-1507(A)(2) (listing nongrievable complaints).

application of personnel policies was non-grievable and reversed, allowing Shifflett's grievance that the County failed to follow its personnel policy for disciplinary proceedings under Chapter 16 to continue. Shifflett argues, in part, that this later opinion conflicts with the circuit court's earlier order on compliance review. Prior to oral argument, this Court ordered the parties to brief whether this Court has jurisdiction over this appeal and whether the circuit court's opinion on the compliance matter is a final order capable of review. The parties agree that this is a final order and that this Court has jurisdiction.

## ANALYSIS

Shifflett's primary argument on appeal is that the circuit court construed its statutory jurisdiction under Code § 15.2-1507 too narrowly. In Shifflett's view, the circuit court was able to review not only FCPD's compliance with the grievance procedure, but also his arguments that FCPD violated the United States Constitution, LEOPGA, and FCPD's personnel regulations. While neither party suggests that the circuit court's judgment below was anything but a final order subject to our review, we start by confirming that—despite the ongoing grievance procedure leading to other matters appealed to the circuit court—the circuit court's decision reviewing the County Executive's determination was a final order under Code § 17.1-405(A)(3).[10] As a result, this Court has jurisdiction to review it. We then determine whether review under Code § 15.2-1507(A)(7)(b) is limited to compliance with the grievance procedure process or extends to other statutory, constitutional, or personnel policy claims.

Both questions require us to interpret statutes, matters we take up de novo. *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 574 (2021). Questions of jurisdiction and authority are also

---

[10] "[A] concession of law is not binding on a court" as we "do not allow parties to define Virginia law by their concessions." *Commonwealth v. Holman*, 303 Va. 62, 75 (2024) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6 (2013)).

issues of law subject to de novo review. *Andrews v. Richmond Redevelopment and Hous. Auth.*, 292 Va. 79, 85 (2016).

> I. The circuit court's order reviewing the compliance decision is a final order reviewable by this Court.

This Court has statutory jurisdiction to review "[a]ny final judgment, order, or decree of a circuit court in a civil matter" (subject to an exclusion not relevant here). Code § 17.1-405(A)(3).[11] While this case is undoubtedly a civil matter, the question is whether the circuit court's order is "final" within the meaning of our jurisdictional statute, given that the grievance process continued on at the county level after the decision was issued. In other words, we must decide whether the "finality" requirement in Code § 17.1-405 applies to the proceedings immediately below in the circuit court or to the larger administrative process—here, the grievance process.

We conclude that the statutory grant of appellate jurisdiction in Code § 17.1-405 applies to the proceedings in the circuit court. Our Supreme Court has explained that a "final judgment is one which disposes of the entire action and leaves nothing to be done except the ministerial superintendence of the execution of the judgment." *Super Fresh Food Mkts. of Va. Inc. v. Ruffin*, 263 Va. 555, 560 (2002). The circuit court has authority to review "[c]ompliance determinations made by the chief administrative officer" under Code § 15.2-1507(A)(7)(b). After completing that review, the circuit court has no additional or ongoing role to play, meaning that the court's order "disposes of the entire [compliance] action" leaving "nothing to be done." *Super Fresh*

---

[11] This Court also has jurisdiction to review "[a]ny final decision of a circuit court on appeal from . . . [a] grievance hearing decision issued pursuant to § 2.2-3005," Code § 17.1-405(A)(1). But a decision on procedure—such as this one—"simply is not a [grievance hearing] 'decision issued pursuant to § 2.2-3005.'" *Styles v. City of Colonial Heights*, 43 Va. App. 588, 591 (2004). Our decision in *Styles* went on to conclude that, as a result, this Court lacked jurisdiction to hear the appeal presented in that case. However, *Styles* was decided long before this Court's jurisdiction was expanded to include final orders in civil matters generally.

*Foods Mkts.*, 263 Va. at 560. Thus, the circuit court's order is "final" for purposes of Code § 17.1-405, even though there is not yet a "final" resolution to the underlying grievance.

It makes sense that a circuit court has authority to review compliance determinations made by the chief administrative officer immediately, even though the grievance process continues, because of the constitutional interests at stake. A "state employee with a property interest in his employment" has a due process right to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 664 (2009) (quoting *Loudermill*, 470 U.S. at 546). Because failure to comply with the grievance procedures could result in a lack of due process for a grievant, the framework ensures that immediate review is available to quickly deal with the alleged noncompliance. Code § 15.2-1507(A)(7).

In *Mathews v. Eldridge*, 424 U.S. 319, 330-32 (1976), the Supreme Court of the United States explained why it had jurisdiction to review a constitutional challenge to the *procedures* used to terminate Social Security disability benefits, even though the challenger had additional unexhausted mechanisms for internal review on the *merits* of his claim before the agency. Concluding that the "denial of Eldridge's claim to continued benefits was a sufficiently 'final' decision with respect to his constitutional claim," the Court explained that the "constitutional challenge [to the procedures used to adjudicate his case] is entirely collateral to his substantive claim of entitlement." *Id.* at 330. In the same way, "elaborate grievance procedures" protect the due process interests of state and local government employees in the Commonwealth, *Stevens*, 53 Va. App. at 664, and whether the parties are complying with the process is "entirely collateral" to the substantive issues raised as grievances themselves. Here, the reasons for Shifflett's termination and whether it was justified—the core of the underlying grievance—are unrelated to the issue up for immediate review, which is whether the locality complied with the

- 8 -

grievance process itself. Because the matter of compliance was decided separately from the merits, ongoing proceedings at the county level did not interfere with either the finality of the circuit court's order or the ability of this Court to take up Shifflett's appeal.

Finally, we observe that the rest of the statutory framework creating and regulating applicable grievance procedures supports this conclusion. Code § 15.2-1507(A)(7)(b)'s language allowing the chief administrative officer to "determine compliance issues" and then allowing such determinations to be "subject to judicial review" by "petition with the circuit court" stands in sharp contrast to Code § 15.2-1507(A)(9)(a)'s language governing the same officer's review of the grievability of an employee's claims. In the latter case, "[d]ecisions regarding grievability and access to the procedure shall be made by the chief administrative officer . . . at any time prior to the panel hearing." Code § 15.2-1507(A)(9)(a). And those decisions "may be appealed to the circuit court having jurisdiction in the locality in which the grievant is employed for a hearing on the issue of whether the grievance qualifies for a panel hearing." *Id.* But the statute concludes by stating that "[t]he decision of the court is final and is not appealable." Code § 15.2-1507(A)(9)(b). While the circuit court's decision is "final," the statute then expressly removes the appellate jurisdiction that would otherwise apply to such a "final" order. No similar language removes this Court's jurisdiction over a circuit court's collateral decision on compliance under Code § 15.2-1507(A)(7)(b).

To sum up, the circuit court's order was final because no "further action of the court in the cause [was] necessary to give completely the relief contemplated by the court." *de Haan v. de Haan*, 54 Va. App. 428, 437 (2009) (quoting *Brooks v. Roanoke County Sanitation Auth.*, 201 Va. 934, 936 (1960)). With nothing left for the circuit court to do, the grievance process would

only continue down at the county level.[12]  For these reasons, we conclude that we have jurisdiction over Shifflett's appeal under Code § 17.1-405(A)(3).[13]

> II. The circuit court did not err in concluding that review under Code § 15.2-1507(A)(7) is limited to compliance with the grievance process and does not extend to other constitutional, statutory, or personnel policy issues.

We turn now to the scope of compliance review.  Shifflett gave notice of FCPD's alleged noncompliance with the grievance policy to the County Executive, as permitted by the statute. While Shifflett alleged that FCPD failed to provide necessary documents and properly conduct a Step One meeting, he does not appeal the circuit court's decision on those issues.  Instead, Shifflett argues that the circuit court erred in concluding that his constitutional, statutory, and personnel policy arguments fell outside of the court's statutory jurisdiction to review compliance determinations under Code § 15.2-1507.[14]

---

[12] We also agree with the United States Supreme Court that "finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered." *Mathews*, 424 U.S. at 331 n.11.  While Code § 2.2-3005 also gives an employee the right to later appeal the final determination on the grievance, it would likely be too late, under our existing caselaw, to address a compliance issue at this late hour. *See Passaro v. Va. Dep't of State Police*, 67 Va. App. 357, 367 (2017) (explaining that appellate review of hearing officer's determination in the state employee context is limited to issues of law and that issues of fact, policy, or procedure are outside the scope of judicial review).  This holding has not been previously analyzed or applied in the context of a locality's grievance procedure adopted under Code § 15.2-1507, and because it is not necessary to take up whether the same scope of judicial review applies to resolve this appeal, we do not do so today. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (recognizing that "judicial restraint dictates that we decide cases on the best and narrowest grounds available" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

[13] In *Alexandria Redevelopment & Housing Authority v. Walker*, 290 Va. 150, 160 (2015), our Supreme Court took up a circuit court's order reviewing a compliance determination without ever questioning or addressing the finality of that order.  However, in that case, unlike this one, there was no evidence that the grievance process was ongoing.

[14] Code § 15.2-1507(A) requires a locality's grievance procedure to include certain "components and features," including the mechanism for compliance review in Code § 15.2-1507(A)(7).  And Fairfax County's grievance procedure contains a section on "compliance with procedural requirements of this procedure" that is a near match for the statute.

As we discussed above, it is true that an employee who asserts a grievance is entitled not only to certain statutory protections spelled out in the grievance process, but also to certain constitutional protections. *See Stevens*, 53 Va. App. at 664 (affirming that a state employee has a due process right to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" (quoting *Loudermill*, 470 U.S. at 546)). But it is well-established that the "elaborate statutory grievance procedures" instituted by the General Assembly "more than satisfy the minimal requirements of due process." *Id.* Thus, a grievant can seek immediate review of whether a party has failed to "comply with all substantial *procedural* requirements *of the grievance procedure* . . . without just cause." Code § 15.2-1507(A)(7)(a) (emphases added). In other words, the chief administrative officer may consider only whether the parties have substantially complied with the procedural requirements listed in the grievance procedure, and if not, whether there was just cause to excuse the failure.

The statutory process by which an employee can advance various grievances is distinct from the merits of those underlying grievances. Here, Shifflett's arguments that FCPD violated his constitutional and statutory rights by terminating him and that his termination also violated FCPD's personnel policies, are all complaints about the merits of his termination—they are not about the process FCPD has followed in reviewing his complaints. Because they are outside the bounds of the grievance procedure, they are also beyond the chief administrative officer's consideration. Instead, those concerns would need to be alleged as grievances themselves. *See* Code § 15.2-1507(A)(1)(i) (listing "disciplinary actions, including dismissals" as covered under "a complaint or dispute by an employee relating to his employment"); Code

---

Fairfax Cnty. Pers. Reg. § 17.10. Because a locality must adopt the compliance review set out in Code § 15.2-1507(A)(7), and because the assignments of error and circuit court ruling focus only on the statute, we likewise analyze the statute.

§ 15.2-1507(A)(1)(ii) (including "the application of personnel policies, procedures, rules, and regulations" as grievable).[15]

The statute only gives a circuit court limited authority to review the compliance determination made by the chief administrative officer at this stage of the grievance process— nothing more. And the chief administrative officer's determination is constrained to reviewing compliance with the grievance procedure. Thus, the circuit court did not err in rejecting Shifflett's efforts to shoehorn broader questions about the merits of his termination into the compliance review process under Code § 15.2-1507(A)(7).

## CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[15] In fact, the circuit court later confirmed (in a separate proceeding assigned a separate case number) that Shifflett's allegation that FCPD failed to follow its personnel policies and procedures was a grievable issue, reversing the County Executive's determination, and allowing Shifflett's grievance to proceed on that point. Contrary to Shifflett's assertions, a court may conclude without contradiction that an issue is substantively grievable while finding the matter irrelevant to whether the parties have adhered to the procedures for addressing that grievance.