COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Frank, Beales and Senior Judge Clements
Argued at Richmond, Virginia


SPENCER LEE FORD, JR.

MEMORANDUM OPINION[*] BY
v.     Record No. 2171-13-2          JUDGE JEAN HARRISON CLEMENTS
OCTOBER 21, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
James A. Luke, Judge Designate

Stephen K. Armstrong (Reed\Armstrong LLP, on briefs), for
appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Spencer Lee Ford, Jr. ("appellant") was convicted of aggravated malicious wounding in

violation of Code § 18.2-51.2. On appeal, he contends the circuit court clerk's inability to certify

the record as complete and accurate, as well as the clerk's declaration that certain portions may be

false, have deprived him of his due process rights to appellate review. He also maintains the

evidence was insufficient to support his conviction because it failed to prove he acted with malice

and because it proved he acted in self-defense. For the reasons that follow, we affirm his

conviction.

As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  Appellant was involved in a romantic relationship with Michelle Williams and lived with her and their daughter.  The couple began to experience relationship problems and, in September 2012, Williams asked appellant to move out.  Appellant refused.

On the evening of September 14, 2012, Williams came home from work and drove appellant to work at approximately 10:00 p.m.  After dropping him off, she visited her boyfriend. Appellant called Williams and asked her to bring him some papers at his workplace.  When Williams admitted she was at her boyfriend's home, appellant texted her he "would kill over [her] or he would kill for [her]."  Williams did not interpret appellant's threat as directed toward her, however, and delivered his papers at approximately 1:00 a.m.  She returned to her boyfriend's home briefly before heading home.

Appellant and Williams continued to argue by text messages.  She repeated her desire for him to move out, and he responded he would move out only if he could take their daughter with him.  Finally, at approximately 2:00 a.m., Williams announced she was tired and was going to bed.  She locked her bedroom door and went to sleep with her daughter lying next to her.

Later that evening, she awoke to hear appellant entering her bedroom.[1]  He picked up their daughter and moved her to his bedroom before returning and kneeling at the head of

---

[1] Appellant testified he left work early because he was "angry" with Williams and waited downstairs in the dark for her to return home.  When she returned, appellant did not announce his presence because he did not want her to know he was in the house.  Instead, he waited until she went upstairs to her bedroom and followed her ten minutes later.  Appellant acknowledged he followed Williams to her room to "confront" her.

Williams's bed. With his face close to Williams's face, he told her he wanted to kill himself and suggested they seek counseling to save their relationship.

Williams rejected appellant's proposal and asked him to move out. When she made clear she would never give appellant custody of their daughter, he lunged at Williams and began to cut her. She fell to the floor and struggled with appellant over what she later realized was a box cutter. When appellant turned on the light, Williams saw blood "gushing" from her neck. She also noticed appellant was wearing gloves. Williams told appellant she was going to die.

Appellant tied a garment around Williams's neck and assured her she would not die. Despite Williams's pleas, however, appellant did not call for assistance. When Williams asked to see their daughter before she died, appellant left the room to retrieve her. Williams seized the opportunity and secretly called 911.

Officers Guise and Ballentine arrived at Williams's house at approximately 4:00 a.m. and knocked at the front door. After five minutes, Williams ran out of the front door past the officers. Shortly thereafter, the officers saw appellant standing in the doorway. The officers shone their flashlights on him. He appeared uninjured.

Appellant's right hand was positioned against the door in such a way it was concealed from the officers' view. When they asked to see both of his hands, appellant stepped forward and showed them the box cutter in his right hand. He opened the box cutter blade.

Appellant ignored Ballentine's order to drop the knife and turned his back to the officers. He began slashing himself with the box cutter and fell to the ground. When the officers approached to render assistance, he asked them to shoot him and to "take care of" Williams. The officers entered the house and found a pool of blood on the floor next to Williams's bed as well as blood spatter on the wall above the headboard.

Williams was hospitalized for several days as a result of her injuries and required three surgeries. Photographs at trial depicted a cut running from beneath her lip across the side of her face to her left ear. She also sustained a cut across her throat running from one ear to the other. This wound required multiple staples to close. She had wounds on both forearms, as well as a cut on her left palm and on her inner left arm that required sutures.

By the time of trial, Williams still bore scars from her wounds as well as extensive nerve damage. She noted her lip remained swollen and painful and that she took pain medications twice daily. Williams denied having ever seen the box cutter used by appellant to inflict her wounds.

<u>Analysis</u>

I. Uncertified Record On Appeal

Following his conviction, appellant was sentenced on November 13, 2013, and timely noted this appeal. The trial court clerk transmitted the record to this Court on February 6, 2014, but attached a "disclaimer" stating she was "unable to certify that the Table of Contents and records attached . . . constitute[d] the true and complete record on appeal . . . notwithstanding the *Rules of the Court of Appeals* and [the] *Code of Virginia . . . .*" Specifically, the trial court clerk "attested" that the records in the case were not "lodged with the Clerk's Office at the conclusion of the trial and/or sentencing," that she had "no knowledge that the case records and exhibits ultimately deposited with the Clerk's Office represent the entirety of the record," that she had "no knowledge of the authenticity, labeling or description of any exhibit or document presented during any court proceeding associated with [this] case," and that "certain names/signatures purported to be that of the Clerk of this Court or the Clerk's Deputy may be false and affixed to records and/or exhibits without authority to act on behalf of the Clerk of Court . . . ."

Appellant asserts the trial court clerk's inability to certify the accuracy of the exhibits in the record on appeal deprives him of his right to due process. He maintains the trial court clerk "has stated that a complete and accurate record does not currently exist," and asks that we summon the clerk of the trial court pursuant to Code § 8.01-675.4 to ascertain whether "the defects in the record may be remedied and the trial court's record completed and certified." Appellant acknowledges that his right to due process has been violated only "in the event . . . the record cannot be made complete . . . ."[2]

Pursuant to Rule 5A:7(a),

[t]he following constitute the record on appeal from the trial court:

(1) the original papers and exhibits filed or lodged in the office of the clerk of the trial court, including any report of a commissioner in chancery and the accompanying depositions and other papers;

(2) each instruction marked "given" or "refused" and initialed by the judge;

(3) each exhibit offered in evidence, whether admitted or not, and initialed by the trial judge (or any photograph thereof as authorized by § 19.2-270.4(A) and (C)). (All non-documentary exhibits shall be tagged or labeled in the trial court and the tag or label initialed by the judge.);

(4) the original draft or a copy of each order entered by the trial court;

(5) any opinion or memorandum decision rendered by the judge of the trial court;

(6) any deposition and any discovery material encompassed within Part Four offered in evidence (whether admitted or rejected) at any proceeding; and

(7) the transcript of any proceeding or a written statement of facts, testimony, and other incidents of the case when made a part of the record as provided in Rule 5A:8, or the official videotape recording of any proceeding in those circuit courts authorized by

---

[2] Upon the realization of this contingency, appellant asks that we remand his case for a new trial or dismiss his conviction.

the Supreme Court to use videotape recordings. This Court may require that any videotape proceedings be transcribed, in whole or in part, and made a part of the record as provided in Rule 5A:8, except that the transcript shall be filed within 60 days after the entry of the order requiring such transcript; and

(8) the notice of appeal.

Rule 5A:7(b) provides that, "[i]f disagreement arises as to the contents of any part of the record, the matter shall, *in the first instance*, be submitted to and decided by the trial court." (Emphasis added).[3]

Rule 5A:10 outlines the trial court clerk's responsibilities with regard to compiling the record for appeal. Rule 5A:10(a) provides that "[t]he clerk of the trial court shall prepare the record as soon as possible after notice of appeal is filed. . . ." Pursuant to 5A:10(b)(1), "[t]he record shall be compiled in the following order:"

(i) a front cover setting forth the name of the court and the short style of the case;

(ii) a table of contents listing each paper included in the record and the page on which it begins;

(iii) each paper constituting a part of the record in chronological order; and

(iv) *the certificate of the clerk of the trial court that the foregoing constitutes the true and complete record, except omitted exhibits as hereinafter provided.*

(Emphasis added). Pursuant to Rule 5A:10(d), "[t]he failure of the clerk of the trial court to transmit the record as herein provided shall not be a ground for dismissal of the appeal by this Court."

Appellant concedes he could have asked the trial court for relief in ensuring the record on appeal was complete, accurate, and certified by the trial court clerk. We agree. "[A]n appeal

---

[3] Appellant concedes that the exhibits and transcripts were properly made part of the record pursuant to Rule 5A:7.

does not divest the trial court of jurisdiction over ancillary matters reserved to it by statute."

Askew v. Commonwealth, 49 Va. App. 127, 137, 638 S.E.2d 118, 122 (2006).  Pursuant to Code

§ 8.01-428(B),

> [c]lerical mistakes in all judgments or other parts of the record and
> errors therein arising from oversight or from an inadvertent
> omission may be corrected by the court at any time on its own
> initiative or upon the motion of any party and after such notice, as
> the court may order.  During the pendency of an appeal, such
> mistakes may be corrected before the appeal is docketed[4] in the
> appellate court, and thereafter while the appeal is pending such
> mistakes may be corrected with leave of the appellate court.

The term "clerical mistake" includes "oversight or inadvertent omission by . . . clerks of court

and their subordinates."  Belew v. Commonwealth, 284 Va. 173, 178, 726 S.E.2d 257, 260

(2012).

In Belew the appellant realized that a transcript had been omitted from the record on

appeal and moved the trial court to enter an order including it in the record.  By the time the trial

court entered the order, however, more than twenty-one days had passed since final judgment,

and appellant had noted his appeal.  The Supreme Court concluded that, despite Rule 1:1, the

trial court retained jurisdiction under Code § 8.01-428(B) to enter the order.  Thus, the appellant

was not required to seek relief from the appellate court.

Here, appellant does not complain that the record on appeal is, *in fact*, defective or

incomplete.  He does not claim that any specific exhibits or portions of the trial transcript are

false or inaccurate and does not identify any materials that have actually been omitted from the

record that was transmitted to this Court by the trial court clerk.  Rather, he asserts he has been

deprived of due process because the record is *potentially* defective or incomplete due to the trial

---

[4] "[F]or purposes of [Code § 8.01-428(B)], an appeal 'is docketed in the appellate court' when the petition for appeal is received in the appellate court."  Belew v. Commonwealth, 284 Va. 173, 178, 726 S.E.2d 257, 260 (2012) (quoting Lamb v. Commonwealth, 222 Va. 161, 165, 279 S.E.2d 389, 392 (1981)).

- 7 -

court clerk's failure to certify it.[5]  Upon becoming aware of the trial court clerk's disclaimer, however, appellant's remedy "in the first instance" lay with the trial court.  See Rule 5A:7(b).  As he concedes, appellant was responsible for ensuring the record on appeal was complete.  See Lawrence v. Nelson, 200 Va. 597, 598-99, 106 S.E.2d 618, 620 (1959) ("An appellant who seeks the reversal of a decree on the ground that it is contrary to the law and the evidence has the primary responsibility of presenting to this court, as a part of the printed record, the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error.").  See also Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992) (en banc).  Thus, upon discovering any "inadvertent" omissions or errors in the record, see Belew, 284 Va. at 180-81, 726 S.E.2d at 261, appellant was obliged to ensure the record was complete by moving the trial court to correct the record or by seeking leave from this Court to have the record corrected.

---

[5] Contrary to appellant's characterization of the trial court clerk's disclaimer, nothing in the record indicates the clerk stated "a complete and accurate record does not currently exist." Rather, the trial court clerk stated she was "unable to certify . . . the Table of Contents and records attached [as] . . . the true and complete record on appeal" because "[t]he records in said case were not lodged with the Clerk's Office at the conclusion of the trial and/or sentencing proceedings . . ." and because she had "no knowledge that the case records and exhibits ultimately deposited with the Clerk's Office represent the entirety of the record[.]"  Likewise, the trial court clerk based her disclaimer on her purported lack of knowledge of the "authenticity, labeling or description of any exhibit or document presented during any court proceeding associated with [this] case," and affirmatively asserted "certain names/signatures purported to be that of the Clerk of this Court or the Clerk's Deputy may be false and affixed to records and/or exhibits without authority to act on behalf of the Clerk of Court . . . ."

Effective July 1, 2014, "circuit court clerks *shall* have custody of and *shall keep* all court records, including books, *evidence*, records, maps, and papers, deposited in their offices or at such location otherwise designated by the clerk . . . ."  See Code § 17.1-242.  Based on this amendment, the circuit court clerk clearly has a statutory duty to maintain "court records, including . . . evidence."  Thus, any future failure to certify the record on the basis that the clerk of court did not maintain the record could result in contempt proceedings against the clerk.  See Commonwealth v. Beckley, 8 Va. (4 Call) 4 (1780) (issuing a show cause for the trial court's failure to fulfill his duty to provide transcript).

Because appellant failed to seek relief through either of these avenues, he may not now complain he has been deprived of due process on appeal. As a participant in the trial proceedings and as the party seeking relief on appeal, appellant was in a position to assess the record and determine whether it was sufficient for this Court to review intelligently his assignments of error. If he found it lacking, he was obliged to seek relief to complete or correct it, or bear the risk that the record deprived him of a meaningful opportunity for appellate review. "The constitutional guarantee of procedural due process affords a litigant the right to reasonable notice and a meaningful *opportunity* to be heard." Carpitcher v. Commonwealth, 273 Va. 335, 347, 641 S.E.2d 486, 493 (2007) (emphasis added). See also Va. Dep't of Alcoholic Bev. Control v. Tyson, 63 Va. App. 417, 426, 758 S.E.2d 89, 93 (2014) ("'Process is not an end in itself.'" (quoting Olim v. Wakinekona, 461 U.S. 238, 250 (1983))).

Because appellant sought no relief from the trial court or this Court[6] to correct perceived errors or omissions in the record, he has waived the argument that he was deprived of due process. "Pursuant to Rule 5A:18, absent good cause or to attain the ends of justice, we will not consider on appeal an argument that was not presented to the trial court, even if it involves constitutional claims." Ashby v. Commonwealth, 33 Va. App. 540, 545, 535 S.E.2d 182, 185 (2000). Appellant does not argue we should consider his argument under these exceptions to Rule 5A:18, and we will not consider such an argument *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

Accordingly, we decline to consider this assignment of error.

---

[6] The only relief sought by appellant from this Court was to "summon the clerk of the trial court pursuant to Virginia Code § 8.01-675.4 *to see if the defects in the record may be remedied* and the trial court's record completed and verified." (Emphasis added). This Court will not act as an "investigatory" mechanism for appellants to ascertain whether the record is complete. As noted previously, the duty lay with appellant to identify any omissions or errors in the record and to bring them to the attention of the trial court or this Court for correction.

## II. Sufficiency of the Evidence

In his remaining assignments of error, appellant argues the evidence failed to prove he acted with malice or the intent to maim, disfigure, or kill Williams and that it supported the finding he acted in self-defense. In support of these arguments, he cites his testimony that Williams kept a box cutter in her purse and cut him first, prompting him to defend himself. Appellant contends the trial court erred by adopting Williams's testimony, including her account that he was the aggressor. We disagree.

We review the fact finding of the trial court "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). We reverse the decision of the trial court only if it is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). We lack the authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004), and are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Appellant had several prior felony convictions. While he testified that Williams cut his back when he turned away from her during their altercation in the bedroom, he had no apparent wounds when the police arrived. He admitted he was substantially larger than Williams and, even assuming she struck the first blow, he acknowledged he could have left her bedroom and

- 10 -

retreated from the dispute. Despite Williams sustaining a cut across her throat from ear to ear, appellant did not recall cutting her throat.

Appellant had previously refused to heed Williams's requests to move out of her home, and in the hours leading up to the offense, had threatened "to kill" upon learning she was involved with another man. He lay in wait for her in the dark, entered her locked bedroom unannounced in the middle of the night, and removed the couple's child before returning with a box cutter in hand. When Williams rebuffed appellant's attempts at reconciliation and refused to grant him custody of their child, he attacked her. The severity and location of Williams's wounds, the pooled blood on the floor next to her bed, and the lack of apparent injuries to appellant corroborated Williams's account of the events leading up to her wounds. Accordingly, we cannot say her testimony was inherently incredible. See Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006).

Based on Williams's testimony and the other evidence presented, the evidence was sufficient to prove appellant acted with malice and with the intent to permanently harm her. See Johnson v. Commonwealth, 53 Va. App. 79, 101, 669 S.E.2d 368, 378 (2008) ("To be guilty [of malicious wounding], a person must . . . intend to permanently, not merely temporarily, harm another person." (citation omitted)).

> "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."

Burkeen v. Commonwealth, 286 Va. 255, 259, 749 S.E.2d 145, 147 (2013) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)). "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." Viney v. Commonwealth, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005). See also Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997) ("Whether or not an accused

acted with malice is generally a question of fact and may be proved by circumstantial evidence.").

Here, appellant made death threats against Williams, returned home early from work, and hid in the dark until Williams went to bed. Once she was vulnerable, he broke into her room with a box cutter and viciously slashed her throat and face. Even when he recognized the severity of her wounds, he did not seek medical assistance. Based on this evidence, the trial court was entitled to find that appellant acted with malice and with the intent to permanently injure Williams. Likewise, it did not err in finding that the evidence did not support appellant's claim he acted in self-defense.

## Conclusion

For the foregoing reasons, we conclude the trial court did not err and affirm appellant's conviction.

<u>Affirmed.</u>